Edward BONTKOWSKI,
Plaintiff–Appellant,

v.

FIRST NATIONAL BANK OF CICERO,
Defendant–Appellee.

No. 92–1654.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 25, 1993.

Decided July 1, 1993.

Rehearing and Suggestion for Rehearing
En Banc Denied Aug. 17, 1993.

William J. Stevens (argued), Chicago, IL, for plaintiff-appellant.

Stephen C. Voris (argued), Burke, Warren & Mackay, Chicago, IL, for defendant-appellee.

Before CUDAHY and FLAUM, Circuit Judges, and MIHM, District Judge.*

CUDAHY, Circuit Judge.

The plaintiff, Edward Bontkowski, filed a one-count action under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq., against First National Bank of Cicero, alleging a pattern of racketeering that ultimately forced Bontkowski's trucking company into bankruptcy. First National moved to dismiss the case, arguing that Bontkowski's claim was time-barred by the four-year statute of limitations for civil RICO claims. The district court granted the motion, finding the claim barred under the "last predicate act" rule of RICO accrual. Applying a different accrual rule dictated by this court's decision in McCool v. Strata Oil Co., 972 F.2d 1452 (7th Cir.1992), we affirm.

## I.

This case has its roots in a conspiracy charge involving the plaintiff, Edward Bontkowski, and seven other men who allegedly conspired to defraud the defendant, First National Bank of Cicero. Ronald Berkovitz, through a bank officer named William Giova, brokered bank loans to individuals in return for a fee taken from the loan proceeds. Bontkowski was one of Berkovitz's customers, and Berkovitz arranged for Bontkowski to obtain quick financing for his trucking company. On or about February 25, 1982, Berkovitz sent Bontkowski to Giova, where Bontkowski obtained two loans, for $370,000 and $100,000, respectively. Bontkowski signed a note for the $370,000 loan and presented as collateral bearer bonds he had received from Berkovitz. The bonds, issued by the Industrial Development Corp. of Corpus Christi, were stolen. Although Bontkowski was aware that a portion of the loans was to be paid to Berkovitz, he apparently did not know that the bonds he used as collateral were stolen.

Berkovitz and Giova had engaged in a series of such loan transactions before bank officers discovered that the bonds were stolen. Federal agents seized the bonds and the bank demanded the $470,000 in loans it had made to Bontkowski, forcing Bontkowski's business into bankruptcy. In April 1984, Berkovitz, Giova, Bontkowski and five others were indicted in a twenty-five count indictment for their involvement in the loan scheme.

Bontkowski pleaded guilty to two counts of bank fraud, admitting that when he applied for the two loans he knew that Berkovitz would receive part of the proceeds. Bontkowski received four-year concurrent sentences on each count. On appeal, this court remanded Bontkowski's bank fraud conviction on the grounds that the government was required to prove that Bontkowski *knew* the bonds were stolen, Bontkowski v. United States, 850 F.2d 306, 314–15 (7th Cir.1988), and the district court ultimately vacated that conviction.[1]

Nearly two years after his conviction was vacated, Bontkowski filed this civil RICO action against First National on November 11, 1991. Bontkowski alleges that First National committed its first act of racketeer-

---

* The Honorable Michael M. Mihm, Chief Judge of the United States District Court for the Central District of Illinois, is sitting by designation.

1. This court remanded Bontkowski's bank fraud conviction in light of the decision in United States v. Bruun, 809 F.2d 397 (7th Cir.1987), which reversed the conviction of David Bruun, one of the seven men indicted in this scheme, because there was no evidence introduced at trial that Bruun knew that the securities he received from Berkovitz were stolen. Id. at 411.

ing—wire fraud—through its vice president, Giova, on February 26, 1982, when Giova phoned Bontkowski to inform him that he should come to the bank to process a loan he had previously applied for. Bontkowski maintains that Giova knowingly and fraudulently informed him that First National had checked with the Securities Information Center and that the bonds were legitimate collateral. Bontkowski's complaint alleges further acts of racketeering on March 26 and April 6, 1982, when Giova knowingly accepted stolen securities as collateral for loans that Berkovitz arranged for David Bruun, who is not a party to this action.

■ First National moved to dismiss the action under Federal Rule of Civil Procedure 12(b)(6) as barred by the statute of limitations. The district court granted the motion, concluding that Bontkowski's RICO action is untimely under the last predicate act rule [2] and that equitable tolling principles cannot salvage the suit. Bontkowski appeals.

## II.

■ When considering a defendant's motion to dismiss, we view the complaint's allegations in the light most favorable to the plaintiff. *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957). We take as true all well-pleaded facts and allegations in the plaintiff's complaint, *Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.*, 805 F.2d 732, 733 (7th Cir.1986), *cert. denied*, 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987), and the plaintiff is entitled to all reasonable inferences that can be drawn from the complaint. *Ellsworth v. Racine*, 774 F.2d 182, 184 (7th Cir.1985), *cert. denied*, 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986).

RICO makes unlawful various activities associated with the operation of an "enterprise" by means of a "pattern of racketeering activity." 18 U.S.C. § 1962(a)–(d). "Racketeering" includes wire and mail fraud, 18 U.S.C. § 1961(1), and "pattern of racketeering activity" means "at least two acts of racketeering activity ... the last of which occurred within ten years ... after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). Courts have jurisdiction to enforce RICO under 18 U.S.C. § 1964, which allows "any person injured in his business or property by reason of a violation of section 1962" to sue to recover treble damages and attorney's fees.

■ Since the time that the district court applied the "last predicate act" rule of RICO accrual to this case, this court has rejected that rule in favor of the so-called majority rule set forth in *McCool v. Strata Oil Co.*, 972 F.2d 1452 (7th Cir.1992). Under the rule adopted in *McCool*, "a RICO claim accrues when the plaintiff discovers her injury, even if she has not yet discovered the pattern of racketeering." *Id.* at 1465. Although Bontkowski contends he was unaware until 1988 that the bank had committed a wire fraud upon him,[3] he admits that he first learned of his injury when the bank called his loan in in 1982. Appellant's Br. at 13. At the latest, he discovered his injury in 1984 when he and the others were indicted. Bontkowski filed his RICO claim in November 1991, well after the expiration of the four-year limitations period for civil RICO claims established in *Agency Holding Corp. v. Malley–Duff & Associates, Inc.*, 483 U.S. 143, 156, 107 S.Ct. 2759, 2767, 97 L.Ed.2d 121 (1987). Thus, unless Bontkowski can prevail on a theory of equitable tolling, his RICO claim is barred by the statute of limitations.

---

**2.** The last predicate act rule provides that the statute begins to run from the date of the last alleged act of racketeering activity. The district judge acknowledged a disagreement among circuits and within the Northern District of Illinois as to when the statute of limitations accrues in civil RICO cases, but concluded that "[i]n the absence of any Supreme Court or Seventh Circuit directive, we remain committed to the last predicate act rule." Mem.Op. at 6.

**3.** Bontkowski maintains that he did not learn that Giova's statement regarding the bonds' legit-

imacy was false and fraudulent until 1988, when he first saw the affidavit of a Securities Information Center employee asserting that no one from First National had checked with the Center to determine whether the bonds at issue were reported lost or stolen. The district court noted, however, that even under a modified discovery approach Bontkowski could not prevail because he knew or should have know that a pattern of racketeering activity existed in 1984, when he and the others were indicted.

■ The doctrine of equitable tolling is read into most federal statutes of limitations, *Cada v. Baxter HealthCare Corp.*, 920 F.2d 446, 451 (7th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 2916, 115 L.Ed.2d · 1079 (1991), including the statute of limitations for civil RICO violations. *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1105 (2d Cir.1988) (stating that "the standard tolling exceptions apply"), *cert. denied,* 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989). As this court noted in *Cada*, equitable tolling "permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Cada*, 920 F.2d at 451. In the context of RICO, therefore, equitable tolling may delay the running of the limitations period "while a victim diligently investigates the possible existence and extent of a pattern of racketeering." *McCool*, 972 F.2d at 1466.

Bontkowski states that although he exercised due ·diligence, nothing caused him to inquire further about the bank's fraud until 1988, when a Securities Information Center employee's affidavit convinced him that First National's statement regarding the legitimacy of the bonds was false. He also contends that his incarceration for much of the time from August 1984 through August 1987 hindered his ability to investigate the case.

We agree with the district court, however, that there is no factual basis for Bontkowski's assertion that a reasonable person in his position would not have known until 1988 of a possible violation of the law. Presumably Bontkowski had enough information to suspect that his legal rights had been infringed when the government seized the stolen bonds from First National in 1982 and forced his business into bankruptcy. If that series of events somehow failed to put Bontkowski on notice, certainly a reasonable person in his position would have understood that he *possibly* had a claim against First National when he and the others, including Giova, First National's vice president, were indicted for banking violations.[4] In spite of his incarcer-

ation for part of the time period at issue, with due diligence Bontkowski reasonably should have been able to garner the necessary information bearing on his RICO claim.

■ Finally, Bontkowski argues that his claim was not ripe because until his bank fraud conviction was vacated he stood *in pari delicto* with the bank and any civil claim against the bank was subject to that defense. The district court stated that Bontkowski should have filed his RICO action before the vacation of his sentence and had a court determine whether he was subject to the *in pari delicto* defense; then, if the court dismissed the action, Bontkowski could have filed a rule 60(b) motion after his conviction was vacated. Fed.R.Civ.P. 60(b) (providing for relief from judgments for, *inter alia,* mistakes and newly discovered evidence). Bontkowski argues that his lawyers advised him that he could not sue the bank unless his criminal conviction was vacated, and contends that the bank was serious about pressing the *in pari delicto* defense and seeking rule 11 sanctions for meritless claims.

■ We do not believe *in pari delicto* applies in this case: the courts considering the previous proceedings did not find First National guilty of any wrongdoing, and the object of the conspiracy was to defraud the bank. *United States v. Bruun*, 809 F.2d 397, 405 (7th Cir.1987). Moreover, even if the *in pari delicto* defense did apply, we agree with the district court that a rule requiring courts to discount time periods during which the prospective plaintiff is subject to the *in pari delicto* defense goes well beyond the positions courts have taken regarding statute of limitations accrual. We reject the argument on these grounds.

### III.

The plaintiff's action is barred by the four-year statute of limitations, and his equitable tolling and *in pari delicto* arguments lack merit. For the foregoing reasons, we AF-

---

4. As this court has held, the plaintiff, by the exercise of reasonable diligence, must only have discovered that the defendant engaged in a "pos-

· sible violation" of the law. *Cada*, 920 F.2d at 451 (stressing that "[t]he qualification 'possible' is important").

FIRM the district court's dismissal of the plaintiff's action.