95 F.3d 1154
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Harold GRAVES, et al., Plaintiffs-Appellants,
v.
COMBINED INSURANCE CO., et al., Defendants-Appellees.
 No. 95-3834.
 United States Court of Appeals, Seventh Circuit.
 Argued June 11, 1996.
Decided Aug. 9, 1996.
 
 Before CUDAHY, KANNE and DIANE P. WOOD, Circuit Judges.
 
 ORDER
 
 1
 Plaintiffs in this class action lawsuit seek compensatory and punitive damages under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, et. seq., from Defendants, Combined Insurance Co. and Credit Life Insurance Co., for allegedly committing fraud and breaching their fiduciary duty by providing term life insurance to Plaintiffs who had purchased credit life insurance.[1] The district court dismissed the suit because Plaintiffs failed to file their suit within the four year statute of limitation under RICO. On appeal, Plaintiffs argue that the district court erred by not equitably tolling the statute of limitations because the Defendants had concealed the fraud. For purposes of a dismissal under Fed.R.Civ.P. 12(b)(6), the facts alleged in a well-pleaded complaint are presumed true and will be viewed in the light most favorable to the plaintiffs. Bontkowski v. First National Bank, 998 F.2d 459, 461 (7th Cir.), cert. denied 114 S.Ct. 602 (1993).
 
 
 2
 As part of their contracts to refinance their mortgages or to obtain second mortgages with Defendants, Plaintiff class allegedly contracted for credit life insurance. Credit life insurance protects the lender from default--if the borrower dies, the insurance company pays the outstanding obligation and discharges the obligation. The insurance generally costs approximately 5-10% of the loan amount, is paid up-front, and lasts the duration of the loan. (Thus, the longer the policy runs, the less the payout). The lender's heir then retains the property. See Mark Budnitz, The Sale of Credit Life Insurance: The Bank as Fiduciary, 62 N.C.L.Rev. 295, 297-98 (1984); 46 C.J.S. Insurance § 1075 (1993). Plaintiffs allege that credit life insurance for this contract should have cost $285. Brief at 2. However, although the contract stated that they were getting credit life insurance, the terms of the insurance actually constituted term life insurance. A table on the contract stated in the first column, "type," under which was printed, "credit life." To the right of the "type" was "premium," under which stated, "19,000 for 36 mos. 1,060.01." Thus, the term policy would last only three years and allegedly would cost more than the credit term policy.
 
 
 3
 After the Plaintiffs executed the insurance contracts, Defendants mailed to them cover letters and term life insurance policies. The cover letter described the loan as "remaining in force for the duration of your loan," and "protect[ing] your mortgage loan." The letter also advised the insurees to keep the policy in a safe place with their mortgage records and to call the company with any questions. The policy terms then described shorter periods of duration and lesser benefits than the credit policies. For instance, the lead Plaintiff, Harold Graves, procured a $60,000 mortgage, and his term life insurance policy provided benefits for $19,000, and lasted three years. Although the cover letter described the loan in terms of credit life insurance, the policy clearly stated at the top that the insurance was for 36 months and the amount was for $19,000. Plaintiffs claim that the Defendants defrauded them by advertising credit life insurance but providing the cheaper term life insurance, and hid the fraud with the cover letter and by delaying the mailing of the cover letter and policy.
 
 
 4
 A civil RICO action accrues when a plaintiff discovers, or should have discovered, his or her injury. The suit must be filed within four years of the accrual date. Bontkowski, 998 F.2d at 461-62; Cada v. Baxter Healthcare Corp., 920 F.2d 446, 450 (7th Cir.1990); see also Thelen v. Marc's Big Boy Corp., 64 F.3d 264, 267 (7th Cir.1995). Here, Plaintiff's injuries occurred when they obtained the cheaper term insurance under the guise of credit insurance. They should have discovered this injury because the terms of the policy disclosed the discrepancies. See Wortman v. Smith Barney Inc., No. 95-3278, slip op. (7th Cir. May 8, 1996); Reed v. Mokena School Dist. No. 159, 41 F.3d 1153, 1155 (7th Cir.1994). The last cover letter and policy received by a plaintiff was May 4, 1990. The suit was first filed on January 31, 1995. Thus, unless the statute of limitations is tolled, Plaintiffs' suit is time-barred.
 
 
 5
 Plaintiffs argue that the statute of limitations should be tolled because Defendants fraudulently concealed their misdeed through the language in the cover letter and the delay in mailing the policy and cover letter. In Wortman, this court recently explicated the difference between equitable estoppel and equitable tolling in statute of limitation cases. Equitable estoppel is invoked when the defendant takes affirmative steps to prevent the plaintiff from filing suit within the statutory time. It is characterized by distinct acts intended to conceal the original fraud from discovery: making a special effort to cover up fraud or preventing a prospective plaintiff from suing in time, such as promising not to plead statute of limitations as defense. See also Miller v. Runyon, 77 F.3d 189, 191 (7th Cir.1996). Equitable tolling is invoked when the prospective plaintiff does not have the information necessary to bring suit, and will not have the information with due diligence. Self-concealing acts, or acts committed during the course of the original fraud that conceal the fraud from the victim, are characteristic of equitable tolling. See Id. (equitable tolling constitutes circumstances when plaintiff cannot sue in time because of disability, lack of information, or some other circumstance beyond his control). The key distinction between equitable tolling and equitable estoppel is that in order to exercise equitable tolling, a plaintiff must use due diligence to discover the fraud. Only with equitable estoppel is the due diligence requirement excused because of the continued deliberate misconduct by the defendant. See also Chakonas v. City of Chicago, 42 F.3d 1132 (7th Cir.1994); Lever v. Northwestern University, 979 F.2d 552 (7th Cir.1992), cert. denied 508 U.S. 951 (1993).
 
 
 6
 Plaintiffs are ineligible for equitable estoppel. Defendants did nothing to dissuade them from bringing their action, and the cover letter, even if considered a distinct act from the fraud, was not a misrepresentation designed to stop or delay the Plaintiffs from filing their complaint within the statute of limitations. Smith v. City of Chicago Heights, 951 F.2d 834, 839 (7th Cir.1992). Furthermore, even if the cover letter did attempt to prevent the plaintiffs from suing within the statute of limitations by concealing the fraud, that prevention lasted mere seconds because the cover letter accompanied the policy. See Wortman, supra at * 8 (in equitable estoppel cases, "the plaintiff has the full statutory period in which to sue after the estoppel has ceased to impede him."); see also Whirlpool Financial Corp. v. GN Holdings, Inc., 67 F.3d 605, 610 (7th Cir.1995) (when information is available to plaintiff, plaintiff is not impeded from bringing suit). Thus, defendants actions did not impede plaintiffs from bringing their suit within the statutory time, and thus plaintiffs are ineligible to equitably estop the limitations time period.
 
 
 7
 Plaintiffs also are not entitled to equitably toll the statute of limitations because they possessed the information necessary to bring their suit. "A written statement available to the victims of fraud that reveals a fraud has been committed furnishes constructive or inquiry notice of the fraud, and constructive notice creates a duty of diligent inquiry." Wolin, at * 10; see also Whirlpool Financial, 67 F.3d at 610 (in 10b-5 suit, court found that financial statements showing the discrepancies between projections and results put plaintiffs on inquiry notice of fraud). Both the original contract and the mailed policy gave Plaintiffs the information necessary for them to notice the discrepancy between the named insurance and the insurance terms. Without having exercised due diligence, Plaintiffs cannot toll the statute of limitations.
 
 
 8
 Plaintiffs contend that the cover letter prevented them from discovering the fraud, suggesting first that the "reasonable person" standard is too high and that the court should adopt a lesser standard to fit those unable to understand the contract, and second that Plaintiffs could not have been expected to read past the cover letter or understand the discrepancies between the cover letter and the policy. For support for this proposition, Plaintiffs cite another RICO case decided this term involving a loan flipping scheme, Emery v. American General Finance, Inc., 71 F.3d 1343 (7th Cir.1995). They argue that Emery stands for the proposition that the reasonable person standard should be rejected in deference to persons who do not read their documents carefully or who lack the ability to understand that they have been defrauded. However, plaintiffs in Emery alleged a scheme to defraud a class of less competent interpreters: "The allegation is that [the plaintiff] belongs to a class of borrowers who are not competent interpreters of [loan] forms and that the defendant knows this and sought to take advantage of it." Id. at 1347. Plaintiffs here do not allege that they are incompetent or that the Defendants singled them out by virtue of their incompetency in order to defraud them. Instead, Plaintiffs argue that the Defendants hoped that the recipients of the letters would not investigate the terms of the policy by distracting their attention with the cover letter. Further, Emery did not question whether the plaintiff's competency excused the due diligence requirement to equitably toll the statute of limitations. Rather, Emery examined only whether the plaintiffs alleged sufficient facts to show mail fraud. Aside from Emery, this court has endorsed the reasoanble person standard in context of due diligence requirements to toll the statute of limitations. See e.g. Chakonas, 42 F.3d at 1135 (questioned whether a reasonable person in plaintiff's position would have been aware of the claim).
 
 
 9
 While the Plaintiffs may have been confused by the discrepancies between the name of the policy and its terms, and between the cover letter and the policy, they had sufficient information to warrant further inquiry. Had they exercised the slightest due diligence, such as calling the insurer to question the policy, they would have discovered the alleged fraud. Instead, Plaintiffs admit that the term policy mailed to them contained the information that would expose the fraud and that they did not notice, examine, or question the policy terms within the statutory time. Without exercising such reasonable inquiry, they are ineligible to have the statute of limitations equitably tolled.
 
 
 10
 AFFIRMED.
 
 
 
 [1]
 The underlying criminal offense seems to be mail fraud, 18 U.S.C. § 1341, for deliberately making a false or misleading statement with the expectation that the plaintiff would act upon that statement to his detriment. See Midwest Commerce Banking Co. v. Elkhart City Centre, 4 F.3d 521, 524 (7th Cir.1993)