[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-12320

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 30, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 02-03327-CV-TWT-1

OFFICIAL COMMITTEE OF UNSECURED CREDITORS
OF PSA, INC., et al.,
on behalf of PSA, Inc., et al.,

Plaintiff,

TRUSTEE DARRYL S. LADDIN,
of the ETS Creditors' Litigation Trust,

Plaintiff-Appellant,

versus

CHARLES EDWARDS, et al.,

Defendants,

LEGENDS COMMUNICATIONS, INC.,
SHELDON E. FRIEDMAN,
FRIEDMAN, DEVER & MERLIN, LLC,
PWH, INC.,
d.b.a. Friedman, Denver & Merlin, LLC
d.b.a. Sheldon E. Friedman,
KARLOVEC FINANCIAL, INC.,
RELIANCE TRUST COMPANY, PENSCO, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(January 30, 2006)**

Before CARNES, HULL and PRYOR, Circuit Judges.

PRYOR, Circuit Judge:

This appeal presents two issues, the first of which is an issue of first impression in this Circuit: (1) whether the doctrine of in pari delicto bars a trustee's claims on behalf of a bankrupt debtor for violations of the Racketeer Influenced and Corrupt Organizations Act; and (2) whether the trustee can maintain a claim for aiding and abetting a breach of fiduciary duties under Georgia law. See 11 U.S.C. § 541(a); 18 U.S.C. § 1964(c). Darryl S. Laddin is the trustee-in-bankruptcy for ETS, which operated a massive Ponzi scheme that defrauded thousands of investors of hundreds of millions of dollars. Laddin appeals an order that dismissed his complaint, under RICO and Georgia law, against entities that, Laddin alleges, assisted ETS in the operation of its fraudulent scheme. Because the defense of in pari delicto bars recovery by a central and active violator of RICO and Georgia courts do not recognize a claim for aiding and abetting a breach of

2

fiduciary duties, we affirm the dismissal of Laddin's complaint.

## I. BACKGROUND

In his complaint, Laddin alleged that in October 1994, Charles Edwards formed ETS Payphones, Inc., a company that sold and leased-back payphones as investment opportunities. "With Edwards at its helm, ETS devised [a] scheme" where an investor paid a fixed sum to purchase a payphone, and ETS leased the payphone back from the investor for a fee. "ETS represented itself as . . . a no loss proposition" and induced individuals to purchase the phones. Although "ETS . . . created marketing and promotional materials that promised returns . . . of 14% or 15%," it consistently lost money on its payphone operations and continually had to attract new investors to meet its obligations to existing investors. "[W]ith the sale of each phone, ETS assumed a liability it could not satisfy." The operation of the sale-leaseback program was a Ponzi scheme that defrauded thousands of investors of over $300 million. As the sole shareholder of ETS, Edwards transferred the proceeds from ETS to himself or other companies he owned.

On September 11, 2000, ETS filed for bankruptcy. The bankruptcy court allowed the creation of an Official Committee of Unsecured Creditors, and the Debtors and Creditors' Committee created the ETS Creditors' Litigation Trust. The committee appointed Laddin as trustee of the debtor estate.

3

Laddin sued several defendants, including Reliance Trust Co., PENSCO, Inc., and Community National Bank, for (1) aiding and abetting a breach of fiduciary duties under Georgia law, (2) violations of section 1962(c) and (d) of RICO, 18 U.S.C. §§ 1962(c), (d), and (3) avoidance claims. Reliance Trust Co., PENSCO, Inc., and Community National Bank (collectively, IRA Custodians) are large holders of individual retirement accounts, and Laddin alleged that these IRA Custodians aided ETS in defrauding investors by funneling investor IRA funds into ETS payphone investments. Laddin alleged that "[b]y failing to conduct appropriate due diligence and/or ignoring the facts altogether," "[t]he IRA Custodians enabled thousands of investors to partake of the ETS scheme and caused ETS to incur millions of dollars in additional debt."

The IRA Custodians moved to dismiss Laddin's complaint. They argued that Laddin, as trustee, could not maintain a claim of aiding and abetting a breach of fiduciary duties and the doctrine of in pari delicto, which provides that a wrongdoer may not profit from his wrongful acts, barred Laddin's claims. The district court granted the motions to dismiss.

Before it addressed the merits of Laddin's complaint, the district court addressed Laddin's standing to sue. The district court concluded that Laddin had standing to bring claims on behalf of the debtor, ETS, but Laddin did not have

4

standing to assert claims on behalf of the creditors. The court reasoned that the Creditors' Committee did not have the authority to assign the claims belonging to ETS creditors and the Trust Agreement did not authorize Laddin to bring claims on behalf of creditors.

The district court also concluded that the doctrine of in pari delicto barred Laddin's complaint. The district court found that, under Georgia law, the wrongdoing of Edwards as a sole shareholder was imputed to ETS, the debtor corporation, under the "sole actor" rule. The court reasoned that, because the "legal and equitable interests of the debtor" in bankruptcy are only as strong as the debtor's claim against defendants at the commencement of the bankruptcy, see 11 U.S.C. § 541(a), the doctrine of in pari delicto barred Laddin's state law claims. The district court also held that the doctrine of in pari delicto barred Laddin's claims under RICO. Laddin appeals the dismissal by the district court.

## II. STANDARD OF REVIEW

This Court reviews de novo the ruling of the district court on a motion to dismiss and construes the allegations in the complaint "in the light most favorable to the plaintiff." Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1263 (11th Cir. 2004). A motion to dismiss should not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which

5

would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46, 78 S. Ct. 99, 101 (1957).

### III. DISCUSSION

Our discussion is divided into three parts. We first address the trustee's argument that his complaint is not subject to a defense of in pari delicto that might have been asserted against the debtor. We then discuss whether the defense of in pari delicto can be asserted against a plaintiff who asserts violations of the federal RICO statute. We finally consider whether the trustee can maintain a claim under Georgia law for aiding and abetting a breach of fiduciary duties.

*A. The Trustee Is Subject to the Defenses that Were Available Against the Debtor.*

The Bankruptcy Code provides that property of the debtor estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "Legal interests or equitable interests" include any causes of action the debtor may bring. Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., 267 F.3d 340, 356 (3d Cir. 2001). A trustee, as the representative of the estate, succeeds into the rights of the debtor-in-bankruptcy and has standing to bring any suit that the debtor corporation could have brought outside of bankruptcy. 11 U.S.C. § 323; O'Halloran v. First Union Nat'l Bank, 350 F.3d 1197, 1202 (11th Cir. 2003). The argument of the IRA Custodians that

6

the wrongdoing of ETS deprives Laddin of standing to assert claims against them fails because "[a]n analysis of standing does not include an analysis of equitable defenses, such as in pari delicto." R.F. Lafferty & Co., 267 F.3d at 347. We agree with the district court that Laddin had standing based on an alleged injury to the debtor estate, see id. at 346–48, but Laddin's standing to bring claims on behalf of the debtor estate does not mean that the debtor's wrongdoing is immaterial.

Laddin contends that his enforcement, as a trustee of the "legal interests or equitable interests" of the debtor estate, is not subject to the doctrine of in pari delicto. Laddin argues that, because the doctrine of in pari delicto depends on the "personal malfeasance of the individual seeking to recover," the wrongs of ETS should not be imputed to him as the bankruptcy trustee. Laddin asserts that his argument is supported by the legislative history to the Bankruptcy Code, which explains that "[t]o the extent . . . an interest is limited in the hands of the debtor, it is equally limited in the hands of the estate except to the extent that defenses which are personal against the debtor are not effective against the estate." 124 Cong. Rec. 32,399 (1978).

We need not resort to legislative history because the text of section 541(a) is unambiguous, and "the language of our laws is the law." CBS, Inc. v. Primetime 24 Joint Venture, 245 F.3d 1217, 1227 (11th Cir. 2001). Under the plain meaning

7

of section 541(a), the debtor estate includes all "legal or equitable interests of the debtor as of the commencement of the case." 11 U.S.C. § 541(a) (emphasis added). "A bankruptcy trustee stands in the shoes of the debtor and has standing to bring any suit that the debtor could have instituted" when the debtor filed for bankruptcy, and there is no suggestion in the text of the Bankruptcy Code that the trustee acquires rights and interests greater than those of the debtor. O'Halloran, 350 F.3d at 1202; see also 11 U.S.C. § 362(a). If a claim of ETS would have been subject to the defense of in pari delicto at the commencement of the bankruptcy, then the same claim, when asserted by the trustee, is subject to the same affirmative defense.

Even if we considered legislative history, Laddin's argument would fail. The portion of the legislative history on which Laddin relies pertains to section 541(d), not section 541(a). Section 541(d) governs "[p]roperty in which the debtor holds . . . only legal title and not an equitable interest, such as a mortgage secured by real property . . . ." 11 U.S.C. § 541(d). The portion of the legislative history quoted by Laddin is inapplicable to the interpretation of "property of the debtor estate" under section 541(a). See 124 Cong. Rec. 32,399. In the law of commercial paper, personal defenses are affirmative defenses that may not be asserted against a holder-in-due-course. See U.C.C. § 3-305(a)(1), (2), (3) (stating

8

that a holder-in-due-course is subject to real defenses of duress, fraud in the factum, infancy, insolvency, and legal incapacity); see also FDIC v. Wood, 758 F.2d 156, 160 (6th Cir. 1985); 6 Ronald A. Anderson, Anderson on the Uniform Commercial Code § 3-305:103 (3d ed., rev. vol. 1998) ("Under the Negotiable Instruments Law that preceded the Code, the defenses were divided into real and personal defenses."). In his complaint, Laddin does not assert any rights either as a holder-in-due-course or under section 541(d). Laddin provides no support for his assertion that in pari delicto is a personal defense that is excluded from the debtor estate under section 541(a).

Our reading of the text of section 541(a) also comports with the purposes of the Bankruptcy Code. See Demarest v. Manspeaker, 498 U.S. 184, 190–91, 111 S. Ct. 599, 604 (1991) (stating that the text of the statute governs unless the result would be "so bizarre that Congress could not have intended it" (internal quotations and citations omitted)). Upon the commencement of a bankruptcy case, an automatic stay freezes the rights of parties to the bankruptcy, both debtor and creditors. 11 U.S.C. § 362(a). The automatic stay and the definition of the debtor estate "place[] both temporal and qualitative limitations on the reach of the bankruptcy estate." Sender v. Buchanan (In re Hedged-Inv. Assocs.), 84 F.3d 1281, 1285 (10th Cir. 1996); see 11 U.S.C. § 541. Under Laddin's erroneous

9

interpretation of section 541, a postpetition event, the appointment of a trustee, could undermine the automatic stay and change the nature of the legal and equitable interests of the debtor estate.

Laddin argues that his recovery would ultimately inure to the benefit of innocent creditors instead of the wrongful debtor, but he fails to account for the likelihood that individual creditors damaged by the debtor's Ponzi scheme could separately pursue claims against the IRA Custodians free from the bar of in pari delicto. If Laddin were allowed to pursue the debtor's claims, his recovery, on the one hand, would become part of the bankruptcy estate to be apportioned among creditors without regard to whether they were harmed by the IRA Custodians. See 11 U.S.C. §§ 507, 1129(b)(2) (stating that the plan of confirmation must be "fair and equitable[] with respect to each class of claims or interests"). If creditors who were harmed by the IRA Custodians, on the other hand, sued separately outside of bankruptcy, then those creditors would not risk dilution through apportionment to senior creditors or unharmed creditors of equal priority. See id. § 507 (prioritizing classes of claims). Creditors whose legal interests were harmed by the IRA Custodians could rightfully recover more outside of bankruptcy because they would not compete with the trustee's claims on behalf of the debtor estate.

We are not alone in concluding that the defense of in pari delicto may be

asserted against a bankruptcy trustee. Although this is an issue of first impression in this Circuit, our sister circuits that have considered the issue have unanimously concluded that in pari delicto applies with equal force to a trustee-in-bankruptcy as a debtor outside of bankruptcy. See Grassmueck v. Am. Shorthorn Ass'n, 402 F.3d 833, 837 (8th Cir. 2005); Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., 267 F.3d 340, 356–57 (3d Cir. 2001); Terlecky v. Hurd (In re Dublin Sec.), 133 F.3d 377, 381 (6th Cir. 1997); Sender v. Buchanan (In re Hedged-Inv. Assocs.), 84 F.3d 1281, 1285 (10th Cir. 1996); see also Official Comm. of Unsecured Creditors of Color Tile v. Coopers & Lybrand, LLP, 322 F.3d 147, 158–66 (2d Cir. 2003) (applying the defense of in pari delicto to bar Texas law claims brought by trustee-in-bankruptcy). Against this weight of authority, Laddin urges us to chart a new course.

Laddin erroneously relies on a decision of the Seventh Circuit and the perspective of a commentator to support his argument that in pari delicto does not bar recovery by a bankruptcy trustee. See Scholes v. Lehmann, 56 F.3d 750, 754 (7th Cir. 1995); cf. Jeffrey Davis, Ending the Nonsense: The *In Pari Delicto* Doctrine Has Nothing to Do with What Is § 541 Property of the Bankruptcy Estate, 21 Emory Bankr. Dev. J. 519, 542 (2005). Laddin argues that the Seventh Circuit refused to apply in pari delicto to bar recovery for a receiver who brought a

11

fraudulent conveyance action under Illinois law, Scholes, 56 F.3d at 754, but Laddin's appeal is governed by the Bankruptcy Code, not the law of receiverships and fraudulent conveyances under state law. See Knauer v. Jonathon Roberts Fin. Group, Inc., 348 F.3d 230, 234–37 (7th Cir. 2003); In re Hedged-Inv. Assocs., 84 F.3d at 185 & n.5. Fraudulent conveyances also are an exception to the general rule that the trustee takes the debtor estate as it is at the commencement of the bankruptcy. Compare 11 U.S.C. § 544(b) (providing that trustees may void prepetition fraudulent conveyances after the commencement of the bankruptcy) with id. § 541(a) (providing that the debtor estate includes "all legal or equitable interests of the debtor in the property as of the commencement of the case" (emphasis added)). As for Laddin's other persuasive authority, the legal commentator makes the same flawed arguments about legislative history and the Scholes decision that we have already rejected. See Davis, supra at 521–22, 538–39; see also Tanvir Alam, Fraudulent Advisors Exploit Confusion in the Bankruptcy Code: How *In Pari Delicto* Has Been Perverted to Prevent Recovery for Creditors, 77 Am. Bankr. L.J. 305 (2003).

Both the text and purposes of the Bankruptcy Code support the conclusion of the district court that Laddin's complaint is subject to the same defenses that were available against a complaint filed by the debtor at the commencement of the

bankruptcy. "The equitable defense of in pari delicto is available in an action by a bankruptcy trustee against another party if the defense could have been raised against the debtor." Grassmueck, 402 F.3d at 837 (citing R.F. Lafferty & Co., Inc., 267 F.3d at 355–56, 358). The next questions involve whether the defense of in pari delicto would have barred recovery by the debtor, ETS, under either the federal RICO statute or Georgia law. We consider these questions in turn.

*B. The Doctrine of In Pari Delicto Bars a RICO Claim by a Conspirator.*

Laddin argues that the district court erroneously dismissed his RICO claims because the defense of in pari delicto is not an available defense against the debtor. Under RICO, "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue . . . and shall recover threefold the damages he sustains . . . ." 18 U.S.C. § 1964(c). Section 1962(c) of RICO states, "It shall be unlawful for any person employed by or associated with any enterprise . . . to conduct or participate . . . in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Id. § 1962(c). Conspiracies in violation of section 1962(c) are also prohibited. Id. § 1962(d).

The doctrine of in pari delicto is an equitable doctrine that states "a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing." Black's Law Dictionary 794 (7th ed. 1999). This common law

13

defense "derives from the Latin, in pari delicto potior est conditio defendentis: 'In a case of equal or mutual fault . . . the position of the [defending] party . . . is the better one.'" Bateman Eichler, Hill Richards, Inc. v. Berner, 472 U.S. 299, 306, 105 S. Ct. 2622, 2626 (1985). The doctrine of in pari delicto is based on the policy that "courts should not lend their good offices to mediating disputes among wrongdoers" and "denying judicial relief to an admitted wrongdoer is an effective means of deterring illegality." Id. The issue whether this defense bars a complaint under RICO is one of first impression for our Circuit.

The federal law of affirmative defenses governs the enforcement of causes of action created by federal statutes. See O'Melveny & Myers v. FDIC, 512 U.S. 79, 84–85, 114 S. Ct. 2048, 2053 (1994). There is a paucity of federal caselaw regarding whether the doctrine of in pari delicto bars a complaint under RICO, and none of our sister circuits have squarely decided the issue. See Roma Constr. Co. v. Arusso, 96 F.3d 566, 570 (1st Cir. 1996) ("Whether or not there exists such an 'innocent party' requirement is a question of first impression in this circuit and, indeed, we are not aware of any cases anywhere that adopt such a requirement."); cf. Bontkowski v. First Nat'l Bank of Cicero, 998 F.2d 459, 462 (7th Cir. 1993) (considering whether the doctrine of in pari delicto barred a RICO defendant for purposes of equitable tolling).

In two cases, the Supreme Court has considered the application of the in pari delicto doctrine in the enforcement of antitrust and securities laws. Bateman Eichler, 472 U.S. 299, 105 S. Ct. 2622; Perma Life Mufflers, Inc. v. Internat'l Parts Corp., 392 U.S. 134, 88 S. Ct. 1981 (1968). Although in both cases it declined to apply the doctrine of in pari delicto, the Court explained that this or a related doctrine might apply in other contexts. We consider each decision of the Supreme Court for guidance in resolving this issue.

At first glance, the earlier decision of the Supreme Court, Perma Life Mufflers, would appear to preclude the use of in pari delicto against a federal RICO claim because the Court held "that the doctrine of in pari delicto, with its complex scope, contents, and effects, is not to be recognized as a defense to an antitrust action." 392 U.S. at 140, 88 S. Ct. at 1985. The plaintiffs were franchisees who alleged that the franchisor, its parent corporation, other subsidiaries, and several individuals conspired to restrain trade and engage in illegal price discrimination. Id. The Court cautioned against "invoking broad common-law barriers to relief where a private suit serves important public purposes," and in the antitrust context, the Court explained that there is an "overriding public policy in favor of competition." Id. at 138–39, 88 S. Ct. at 1984. "A more fastidious regard for the relative moral worth of the parties would

15

only result in seriously undermining the usefulness of the private action as a bulwark of antitrust enforcement." Id. That first glance does not tell the whole story, however.

The rest of the story in Perma Life Mufflers is that the franchisees were, in the eyes of the Court, at worst, passive violators of the antitrust laws. Because "in pari delicto literally means 'of equal fault,'" the Court reasoned that the doctrine should not "deny[] recovery to injured parties merely because they have participated to the extent of utilizing illegal arrangements formulated and carried out by others." Id. at 138–39, 88 S. Ct. at 1985 (emphasis added). The Court explained that the participation of the franchisees in the alleged antitrust conspiracy "was not voluntary in any meaningful sense." Id. at 139, 88 S. Ct. at 1985. Although the franchisees "sought the franchises enthusiastically[,] . . . they did not actively seek each and every clause of the agreement." Id. The franchisees "alleged that they had continually objected to [the violative terms]." Id. Although the Court held that in pari delicto did not bar the franchisees from recovery, it explicitly left open the question whether complete involvement in an antitrust violation, "wholly apart from the idea of in pari delicto," would bar a plaintiff from bringing an antitrust claim. Id. at 140, 88 S. Ct. at 1985.

The later decision of the Supreme Court in Bateman Eichler is much like the

16

earlier one in Perma Life Mufflers, because the Court refused to apply the doctrine of in pari delicto to bar tippees from recovery for insider trading under federal securities laws. Bateman Eichler, 472 U.S. 299, 105 S. Ct. 2622. The tippees alleged that a securities broker and a company official had induced them to purchase company stock by providing them with materially false insider information. Id. at 301–02, 105 S. Ct. at 2624–25. The tippees alleged that they suffered damages when the stock price fell as a result of the false information. Id.

As in Perma Life Mufflers, the holding in Bateman Eichler was limited, because the Court concluded that the tippees were not active participants in the alleged violation of federal law. The Court stated that, "in its classic formulation, the in pari delicto defense was narrowly limited to situations where the plaintiff truly bore at least substantially equal responsibility for his injury," id. at 306–07, 105 S. Ct. at 2627, and the Court explained that "where a plaintiff truly bore at least substantially equal responsibility for the violation, a defense based on such fault . . . should be recognized." Id. at 308–09, 105 S. Ct. at 2628 (emphasis added). The Court then concluded that the face of the complaint did not reveal that the tippees had engaged in wrongdoing. Id. at 311 n.21, 105 S. Ct. at 2629 n.21 (stating that "the complaint does not set forth sufficient facts to conclude" that the tippees were in delictum because "it is uncertain whether [the tippee-plaintiffs] had

17

any basis to believe that [the tipper-defendant] . . . had violated his fiduciary duties").

The Court explained that "there are important distinctions between the relative culpabilities of tippers, securities professionals, and tippees in these circumstances." Id. at 312–13, 105 S. Ct. at 2630. The Court did "not believe that the tippee properly can be characterized as being of substantially equal culpability as his tippers." Id. at 314, 105 S. Ct. at 2631. The Court concluded that, because the tippers in Bateman Eichler "masterminded this scheme to manipulate the market . . . for their own personal benefit[] and . . . used the . . . respondents as unwitting dupes," the tippees were not equally culpable. Id.

The Court in Bateman Eichler expressed its desire to advance the policy goal of the securities laws to protect "the investing public and the national economy through the promotion of 'a high standard of business ethics . . . in every facet of the securities industry.'" Id. at 315, 105 S. Ct. at 2631 (citing SEC v. Capital Gains Research Bureau, Inc., 375 U.S. 180, 186–87, 84 S. Ct. 275, 280 (1963)). Because "'[t]he true insider or the broker-dealer is at the fountainhead of the confidential information[,] . . . the most effective means . . . is to nip in the bud the source of the information'" and allow tippees to recover from the fraudulent tippers. Id. at 316, 105 S. Ct. at 2632 (quoting Nathanson v. Weis, Voisin,

18

Cannon, Inc., 325 F. Supp. 50, 57–58 (S.D.N.Y. 1971)). For that reason, the Court explained that a tippee's complaint should be barred "only where (1) as a direct result of his own actions, the plaintiff bears at least substantially equal responsibility for the violations he seeks to redress, and (2) preclusion of suit would not significantly interfere with the effective enforcement of the securities laws and protection of the investing public." Id. at 310–11, 105 S. Ct. at 2629.

Under Perma Life Mufflers and Bateman Eichler, the application of the defense of in pari delicto to causes of action created by federal statutes depends on two factors: (1) the plaintiffs' active participation in the violation vel non and (2) the policy goals of the federal statute. See Pinter v. Dahl, 486 U.S. 622, 632–33, 108 S. Ct. 2063, 2071 (1988). Both of these factors support the application of the in pari delicto doctrine in this appeal. We consider each factor in turn.

First, it is beyond doubt that the allegations of the trustee's complaint render ETS in active participation with the IRA Custodians. If anything, the conduct of ETS was in majore delicto. Laddin alleged that "ETS devised the scheme and promoted and marketed the sale and leaseback of payphones as investment opportunities to individuals." ETS also "control[led] all aspects of the operation," "created marketing and promotional materials," and "promised returns . . . of 14%

19

or 15%" although it "assumed a liability it could not satisfy." Although the IRA Custodians allegedly "enabled thousands of investors to partake of the ETS scheme and caused ETS to incur millions of dollars in additional debt," ETS "devised the scheme," transferred funds from IRA accounts, and "with the sale of each phone, [] assumed a liability it could not satisfy."

On appeal, Laddin fails to explain how the IRA Custodians violated RICO while ETS was a passive bystander in their scheme to defraud. Laddin's complaint alleged that ETS was the hub of the Ponzi scheme to defraud investors. The allegations in the complaint logically compel the conclusion that ETS had "substantially equal responsibility for [its] injury." Bateman Eichler, 472 U.S. at 308–09, 105 S. Ct. at 2628.

Second, the application of in pari delicto to bar Laddin's complaint advances the policy of civil liability under the federal RICO statute. Laddin argues that plaintiffs should be allowed to recover to serve the deterrent purposes underlying the civil liability provision of RICO regardless of whether the plaintiffs participated in the wrongdoing. We disagree. Under RICO, "[i]t shall be unlawful for any person employed by or associated with any enterprise . . . to conduct or participate . . . in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c)

20

(emphasis added). It would be anomalous, to say the least, for the RICO statute to make racketeering unlawful in one provision, yet award the violator with treble damages in another provision of the same statute. "Congress intended RICO's civil remedies to help eradicate 'organized crime from the social fabric' by divesting 'the association of the fruits of ill-gotten gains.'" Genty v. Resolution Trust Corp., 937 F.2d 899, 910 (3d Cir. 1991) (quoting United States v. Turkette, 452 U.S. 576, 585, 101 S. Ct. 2524, 2529 (1981)). Laddin's recovery under RICO would not divest RICO violators of their ill-gotten gains; it would result in a wealth transfer among similarly situated conspirators.

Laddin argues that some district courts and bankruptcy courts have held that the doctrine of in pari delicto is not an available defense in federal RICO actions because the public policy objectives of RICO are similar to those of the antitrust laws, but Laddin's reliance on these decisions is misplaced. See, e.g., Harper v. AT&T, 54 F. Supp. 2d 1371 (S.D. Ga. 1999); Bieter Co. v. Blomquist, 848 F. Supp. 1446 (D. Minn. 1994); In re Nat'l Mortgage Equity Corp., 636 F. Supp. 1138 (C.D. Cal. 1986). These courts have relied on Perma Life Mufflers to conclude that the punitive and deterrent aspects of antitrust treble damages are equally applicable in the racketeering context, In re Nat'l Mortgage Equity Corp., 636 F. Supp. at 1156 (stating that the reasoning in Perma Life Mufflers is "equally

21

applicable to RICO treble damage actions"), but they misinterpret the holding of Perma Life Mufflers.  Because federal RICO violations, as a matter of law, require affirmative wrongdoing rather than passive acquiescence, Perma Life Mufflers does not preclude the defense of in pari delicto in the RICO context.

The Court in Perma Life Mufflers premised its holding on the passive characteristics of antitrust participants.  In that context, "participation [i]s not voluntary in any meaningful sense" when antitrust violators do not "seek each and every clause of the agreement," but must accept questionably violative terms to obtain an otherwise attractive business opportunity.  Perma Life Mufflers, 392 U.S. at 139, 88 S. Ct. 1985.  Perma Life Mufflers explicitly left open the possibility that a defense of active involvement could bar a complaint about an antitrust conspiracy, and our sister circuits have accordingly barred antitrust claims where the plaintiff was completely involved in the antitrust conspiracy.  See THI-Hawaii, Inc. v. First Commerce Fin. Corp., 627 F.2d 991, 995 (9th Cir. 1980) (holding that there is "complete involvement" where "the illegal conspiracy would not have been formed but for [the plaintiff's] participation" and barring recovery by a plaintiff who negotiated, prepared, and earned revenues from an exclusive sales agreement with the defendant); Columbia Nitrogen Corp. v. Royster Co., 451 F.2d 3, 15–16 (4th Cir. 1971) ("[W]hen parties of substantially equal economic strength

22

mutually participate in the formulation and execution of the scheme and bear equal responsibility for the consequent restraint of trade, each is barred from seeking treble damages from the other."); cf. Premier Elec. Constr. Co. v. Miller-Davis Co., 422 F.2d 1132, 1138 (7th Cir. 1970) ("[W]e believe that Perma Life holds only that plaintiffs who do not bear equal responsibility for creating and establishing an illegal scheme, or who are required by economic pressures to accept such an agreement, should not be barred from recovery simply because they are participants.").

In contrast with antitrust violations, a federal RICO violation requires affirmative and deliberate participation. A violation of RICO requires that the defendants "participated, either directly or indirectly, in the conduct of the affairs of the enterprise . . . through a pattern of racketeering activity." United States v. Starrett, 55 F.3d 1525, 1541 (11th Cir. 1995); 18 U.S.C. § 1962(c). A "'pattern of racketeering activity' requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5) (emphasis added); see id. § 1961(1) (defining "racketeering" as "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery," etc.). The defendant also must "knowingly implement[]" and "mak[e]" decisions. Starrett, 55 F.3d at 1548; see Reves v. Ernst & Young, 507 U.S. 170, 185, 113 S.

23

Ct. 1163, 1173 (1983) (holding that the defendant "participates" if he "directs" the pattern of racketeering activity).

Because a complaint brought by ETS, outside of bankruptcy, against other members of its RICO conspiracy would have been barred by the doctrine of in pari delicto, Laddin is likewise barred from recovery within bankruptcy. Laddin's complaint is barred because ETS was an active participant in the Ponzi scheme and the application of the defense of in pari delicto furthers the policy of the federal RICO statute. The district court did not err when it dismissed Laddin's claim for treble damages under the federal RICO statute, because his recovery was barred based on the face of his complaint.

### C. Georgia Does Not Recognize a Claim for Aiding and Abetting a Breach of Fiduciary Duties.

Laddin contends that the doctrine of in pari delicto does not bar his claims for aiding and abetting a breach of fiduciary duties. We need not reach this issue because we previously have held that Georgia courts have not recognized a cause of action for aiding and abetting a breach of fiduciary duties. Munford v. Valuation Research Corp., 98 F.3d 604, 613 (11th Cir. 1996); see also Monroe v. Bd. of Regents of Univ. Sys. of Ga., 602 S.E.2d 219, 224 (Ga. Ct. App. 2004) ("Georgia has never recognized a claim for aiding and abetting a breach of fiduciary duty."). "[W]e may affirm for any reason supported by the record, even

24

if not relied on by the district court." <u>Cochran v. U.S. Health Care Fin. Admin.</u>, 290 F.3d 775, 778 n.3 (11th Cir. 2002). "Even assuming that Georgia courts will someday recognize a cause of action for aider and abettor liability in the context of a breach of fiduciary claim, the facts in this case do not warrant its creation now." <u>Munford</u>, 98 F.3d at 613. Because the bankruptcy trustee may only "bring any suit that the debtor could have instituted had it not been thrown into bankruptcy," <u>O'Halloran</u>, 350 F.3d at 1202, the district court correctly dismissed Laddin's claim for aiding and abetting a fiduciary duty.

## IV.  CONCLUSION

The dismissal of Laddin's complaint for federal RICO violations and aiding and abetting a breach of fiduciary duties under Georgia law is

**AFFIRMED.**