**In re George Dalyn HOUSER, Debtor.**

**Roswell Holdings, LLC, Plaintiff,**

**v.**

**George Dalyn Houser, Defendant.**

**No. 10–43407–MGD.**

United States Bankruptcy Court,
N.D. Georgia,
Rome Division.

Dec. 15, 2011.

George D. Houser, Sandy Springs, GA, for Debtor.

### ORDER MODIFYING THE AUTO-MATIC STAY AND CON-TINUING HEARING

MARY GRACE DIEHL, Bankruptcy Judge.

This is a factually complicated case, involving the interplay of an illiquid bankruptcy estate, a pending federal forfeiture action against the individual Debtor, and a series of loans by a non-traditional lender to a number of Debtor-affiliated entities. The case has been pending for over fifteen months and, given the factual complexities and the context, a final resolution in the foreseeable future is unlikely. The Movant-lender, essentially an investment company serving as a pass-through entity for the loans at issue, has requested that the Court find the automatic stay inapplicable. The Movant asserts that the loans at issue were made to non-debtor entities and that the security deeds in favor of the Movant encumber property that is not titled in the name of this individual Debtor; therefore, Debtor's bankruptcy estate is not implicated. Alternatively, the lender seeks relief from the automatic stay to exercise its state law rights. No adequate protection

payments are being made to the Movant. The Chapter 7 Trustee opposes the Motion.

Although the Movant seeks termination of the automatic stay, the facts and evidence presented do not warrant such broad relief. The court will modify the stay for a limited purpose to allow the Movant to exercise some of its rights. Additionally, a continued hearing will be held in approximately 90 days to determine if any further relief is warranted at that time.

### I. Factual Background

Roswell Holdings, LLC ("Roswell" or "RH") has moved for a determination that the automatic stay of 11 U.S.C. § 362(a) is inapplicable to actions it may take to enforce its rights in properties which are titled in the names of The Guild, Incorporated ("The Guild") and Roma Development Company, LLC ("Roma"). Alternatively, if the stay is applicable, Roswell seeks a modification of the stay. George Houser ("Houser" or "Debtor") was the sole owner of both The Guild and Roma when the Chapter 7 case was filed. Both entities have been administratively dissolved but are subject to reinstatement.[1] Debtor's interests in these corporations are now property of his bankruptcy estate. Tracey Montz, the Chapter 7 Trustee ("Trustee") opposes the relief, contending that the estate has some interest in the properties at issue and may have claims against Roswell which would be prejudiced if Roswell is permitted to foreclose on its collateral and distribute the proceeds to its investors.

The Court conducted a preliminary hearing on September 26, 2011 and an

1. O.C.G.A. § 14–11–601 *et seq.* governs administrative dissolution of a limited liability company.

evidentiary hearing on November 14, 2011. At the evidentiary hearing, Howard "Woody" Alpern testified. Mr. Alpern is a half owner of Southwest 9th Street Group, LLC, which owns one-third of Roswell. He acts as the manager of Roswell, handling accounting functions. Roswell's Exhibits 1 through 42, except Exhibit 28, were admitted into evidence without objection. The Chapter 7 Trustee's Exhibits 1 and 2 were admitted without objection. Trustee's Exhibits 15, 16, 20 & 24 were admitted over objection. The parties have submitted multiple filings, including post-hearing supplemental briefs, on this Motion. (Docket Nos. 92, 103, 105, 115, 116, & 118–120).

Roswell's Motion concerns four loans. The relevant terms of each transaction will be addressed in turn. First, Roswell and Roma entered into a loan agreement on December 21, 2004 whereby Roma borrowed the original principal amount of $800,000.00 (Loan 1).[2] (RH Exhibit 1). Debtor executed Loan 1 as Member/Manager of Roma. Roma granted a security interest in an 18 acre tract on Highway 411 ("411 Property"). Also in connection with Loan 1, The Guild executed a Guaranty Agreement, signed by Debtor as President of The Guild. (RH Exhibit 4). To secure its guarantee, The Guild pledged two parcels of real estate: 427 Chulio Road and 481 Chulio Road. The security deeds were recorded. (RH Exhibits 5–6).

Real Estate Appraisals for these properties were entered into evidence without objection. Loan 1's collateral has the following appraised value: (1) 411 Property is valued at $870,000.00 (RH Exhibit 12); (2) 427 Chulio is valued at $130,000 (RH Exhibit 10); and (3) 481 Chulio is valued at $35,000 (RH Exhibit 11). As with each of the appraisals discussed herein, the Trustee indicated that she had no basis to dispute the appraised values and she had insufficient funds in the estate to procure her own appraisals.

Second, Roswell and Roma entered into a loan agreement on July 11, 2005 whereby Roma borrowed the original principal amount of $583,000 (Loan 2). (RH Exhibit 13). Debtor executed Loan 2 as Member/Manager of Roma. Roma granted a security interest in two properties commonly known as 209 and 147 Tuckawanna Drive, and the deed to secure debt was recorded. (RH Exhibit 15).

Real Estate Appraisals for these properties were entered into evidence. Loan 2's collateral has the following appraised value: (1) 209 Tuckawanna is valued at $130,000 (RH Exhibit 18); and (2) 147 Tuckawanna is valued at $140,000 (RH Exhibit 19).

Third, Roswell and Roma entered into an installment note on January 2, 2008 whereby Roma borrowed $150,000, following repayment of a note in the original principal amount of $91,000 (Loan 3). (RH Exhibits 20 & 22). Debtor executed Loan 3 as Manager/Member of Roma. Roma granted Roswell a security interest in 553 Chulio Road and 555 Chulio Road and a deed to secure debt was recorded. (RH Exhibit 24). Fourth, Roswell and Roma executed an installment note on January 7, 2008 whereby Roma borrowed an additional $68,000 (Loan 4). (RH Exhibits 21 & 23). 553 Chulio Road and 555 Chulio Road also secure Loan 4.

Real Estate Appraisals for these properties were entered into evidence. The collateral for Loans 3 and 4 have appraised values of $200,000, collectively. 553 Chulio Road was appraised at $95,000 (RH Exhibit 29) and 555 Chulio Road was appraised at $105,000 (RH Exhibit 30).

---

2. The Loan Agreement was later modified (RH Exhibit 2).

## II. Legal Discussion

 The definition of "property of the estate" in 11 U.S.C. § 541 is broad and includes all legal and equitable interests of the debtor as of the commencement of the case. *Patterson v. Shumate,* 504 U.S. 753, 757, 112 S.Ct. 2242, 119 L.Ed.2d 519 (U.S. 1992); *Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards,* 437 F.3d 1145, 1149 (11th Cir.2006). The Trustee alleges that she may have a cause of action which would result in the determination that the bankruptcy estate is the true owner of the real estate at issue. "Legal interests or equitable interests include any causes of action the debtor [or trustee, as the representative of the estate] may bring." *Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards,* 437 F.3d at 1149. Rather than make a determination based upon partial facts and potential legal theories as to whether Debtor has an appropriate legal or equitable interest in the properties at issue under the broad reach of § 541, the Court will assume for purposes of this Order that the automatic stay is applicable.

 Therefore, Roswell's request for relief will be determined under § 362. Subsection (d)(2) provides:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

. . .

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization;

11 U.S.C. § 362(d)(2).[3]

 In a Chapter 7 case, if there is no equity in the property, relief is appropriate because there is no reorganization in prospect. *See* § 721. As previously noted, appraisals for each of the properties were admitted into evidence without objection.[4] The loan documents were likewise admitted. The property owned by Roma and pledged under the various security deeds secures all the Loans because the security deeds include cross-collateralization provisions. (RH Exhibits 5–7, 15 & 24). The property owned by The Guild (427 and 481 Chulio Road) secures only Loan 1, which was executed on December 21, 2004 in the original principal amount of $800,000.

At the evidentiary hearing, Roswell admitted into evidence Exhibit 37, which was described as an accounting of amounts due to Roswell for Loans 1 through 4. Mr. Alpern's testimony was largely in reference to Exhibit 37. Exhibit 37 and Mr. Alpern's corresponding testimony raise questions about the improper application of payments and commingling of funds among Debtor, The Guild, Roma, and other Debtor-affiliated entities. The Trustee raises a number of issues as to the amount

---

**3.** Roswell also cites Section 362(d)(1) as grounds for relief. However, there is no evidence that the values of any of the collateral have declined during the case or are likely to decline in the future. The non-payment of taxes and lack of insurance can be remedied by Roswell by making advances and adding the sums to the loan.

**4.** Debtor, George Houser, filed a response post-hearing that included a number of appraisals that were made a number of years ago. (Docket No. 118). These documents were not properly admitted as evidence. They are hearsay and thus not considered by the court. Further, the outdated nature of the appraisals makes their relevance minimal even if they were admissible.

of the debt and correctly notes that Roswell bears the burden of proof on the lack of equity in the property. 11 U.S.C. § 362(g)(1).

The exact amount of the debt owed to Roswell is subject to dispute, particularly as to the amount of attorneys fees and the allocation of repayments. No question, however, has been raised as to the original advances on each of the Loans. In light of the fact that only partial relief from the stay is being granted at this time, it is not necessary for the Court to determine the exact amount of Roswell's claim. It is sufficient that the evidence supports the conclusion that there is no equity in the property even without consideration of late charges and attorneys fees. At the continued hearing on this matter, Roswell should be prepared to further support the amounts it contends are owed.

The principal amount of the debt is $1,562,209[5], according to Roswell's Proof of Claim.[6] The interest reflected on the proof of claim through the petition date is $130,167. Thus, even without any fees or charges, the total owed to Roswell as of the petition date is $1,692,376. The value of the Roma properties totals $1,563,749 and the Guild properties total $165,000 based on the undisputed appraisals. As a secured creditor, Roswell is entitled to interest that accrues post-petition up to the value of its collateral. Under these facts, which are uncontested, there is no equity in any of the properties irrespective of additional costs, including attorneys fees or late charges.

The Trustee makes several other arguments in urging the Court to continue the automatic stay until she has the opportunity to conclude her analysis as to whether the legal entities who were the nominal borrowers on the loans were distinct from the individual Debtor. However, if the Trustee were to prevail on this claim, it would not change the calculation of equity established by the undisputed evidence. The Trustee also seeks to establish that she may have claims against Roswell based upon the commingling of loan payments and proceeds among the various borrowers and the individual Debtor. Indeed, the evidence at the hearing established that payments received by Roswell from other related borrowers may have been applied to the loans at issue here or advanced to the individual Debtor. These claims by the Trustee are not the subject of any current motion or adversary proceeding and, thus require speculation on the part of the court.

The Trustee has a legitimate concern that the nature of Roswell's business model as a pass-through entity for investors may limit the ability of the Trustee to recover from Roswell if they liquidate the collateral and distribute such proceeds to their investors. *See, e.g., In re Key Developers Group, LLC,* 449 B.R. 148 (Bankr. M.D.Fla.2011). While this is a valid concern, the Court's ruling—modifying the automatic stay for a limited purpose—preserves any potential action the estate may choose to pursue against Roswell. Accordingly, it is

**ORDERED** that the automatic stay as to Roswell Holdings, LLC is **MODIFIED** to allow it to take any and all actions up to, but not including, the placement of adver-

---

5. Roswell's Exhibit 37 shows a principal amount owed of $1,601,000. The difference results from the principal amount of Loan 1 being reflected on Exhibit 37 as $800,000 rather than the $761,209 shown on the Proof of Claim. The Court will use the lower number for purposes of its analysis but notes that the discrepancy in itself raises issues as to the credibility of Exhibit 37.

6. Roswell's proof of claim is deemed allowed as no objection has been filed. § 502(a).

tisements for non-judicial foreclosure, including actions involving the pending action in the United States District Court for the Northern District of Georgia, Case No. 10–cr–00012, against Debtor George D. Houser, to determine the priority of Roswell's claims vis-a-vis the claims of the United States.

It is **FURTHER ORDERED AND NOTICE IS HEREBY GIVEN** that this matter is otherwise continued to **March 9, 2012 at 10:00 a.m. in Room 1201, United States Courthouse, 75 Spring Street, S.W., Atlanta, GA 30303.**