## ACQUISITION CORPORATION OF AMERICA, Appellant,

v.

## FEDERAL SAVINGS & LOAN INSURANCE CORPORATION, Appellee.

### No. 88–6610–CIV.

United States District Court, S.D. Florida.

Dec. 9, 1988.

Richard P. McCusker, Jr., Ft. Lauderdale, Fla., for Acquisition Corp. of America.

Laurel M. Isicoff, Squire, Sanders & Dempsey, Miami, Fla., for Federal Sav. and Loan Ass'n. Ins. Corp.

EDWARD B. DAVIS, District Judge.

THIS MATTER is before this Court on Appellant's Appeal from an Order of the Bankruptcy Court dated May 12, 1988 which allowed Appellant's real property to be sold at a public sale on May 18, 1988.

## FACTS

Around December 15, 1983, Appellant and Sunrise Savings and Loan Association (hereinafter Old Sunrise) entered into a Note, Mortgage and Loan Agreement whereby Old Sunrise agreed to fund $15,-700,000.00 for the purchase of a 30–acre parcel of land in South Palm Beach County. One and one half years later, the Federal Home Loan Bank Board declared Old Sunrise insolvent and appointed the FSLIC as the sole receiver. The FSLIC transferred substantially all of the assets and liabilities of Old Sunrise, including the Note, Mortgage and Loan Agreement, to New Sunrise which was a newly chartered Federal Mutual Savings and Loan Association which continued the business of Old Sunrise.

On or about September 12, 1986, the Federal Home Loan Bank Board declared New Sunrise to be insolvent and appointed the FSLIC as sole receiver for New Sunrise. In December of 1986, the FSLIC as receiver for New Sunrise commenced a foreclosure action against Appellant in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, claiming that the Note and Mortgage were in default. Before the circuit court had a chance to rule on the matter, the parties entered into a Stipulation and Settlement Agreement. This Agreement provided in pertinent part that the FSLIC would accept a reduced payment of the loan in the amount of $8,192,250.00, in exchange for which the Appellant entered into a stipulation consenting to a judgment of foreclosure and a finding of a liability in the outstanding principal amount of the Note plus accrued interest, if the $8,192,250.00 was not paid on or before December 31, 1987.

On December 30, 1987 (one day before Appellant's payment would have been in default), Appellant filed a Chapter 11 Bankruptcy Petition. Upon this filing, Appellee was stayed from proceeding with any action to foreclose on Appellant's property. On January 27, 1988, the bankruptcy court dismissed Appellant's bankruptcy proceeding for failure to file schedules. On rehearing, the bankruptcy court reinstated the Chapter 11 proceeding on the condition that Appellant pay $5,000.00 to the Clerk of the Court because of its untimely filing of schedules, and on the condition that Appellant file a plan of reorganization within thirty days. The bankruptcy court also granted Appellee partial relief from the

stay in order to proceed in state court with the foreclosure of Appellant's thirty acre parcel of real property. The Court ordered that no sale could take place until further order of the court.

On March 17, 1988, the state court entered a Partial Final Summary Judgment of Foreclosure against Appellant in the amount of $14,918,141.76 (the amount Appellant apparently owed Appellee since Appellant had defaulted on the Settlement Agreement). Approximately two months later, at a hearing, the bankruptcy court held that if Appellant could not deposit the $14,918,141.76 in a bank located in the Southern District of Florida, the sale of Appellant's Property would take place on May 18, 1988. It is from this ruling, that Appellant appeals.

## DISCUSSION ON BURDEN OF PROOF

When reviewing a bankruptcy judge's ruling, this Court shall not set aside findings of facts, whether based on oral or documentary evidence, unless clearly erroneous, and due regard should be given to the opportunity of the bankruptcy court to judge the credibility of the witness.[1] Furthermore, the burden of showing that the Bankruptcy Court's findings are clearly erroneous is upon the Appellant. A mere showing that the Bankruptcy Court should have reached another conclusion is insufficient.[2] The only time this Court should determine the Bankruptcy Judge's factual findings are clearly erroneous is when this

Court, on the entire record, is left with a definite and firm conviction that a mistake has been made.[3] The standard plainly does not entitle a reviewing court to reverse the findings of the bankruptcy court simply because it is convinced that it would have decided the case differently.[4] If the bankruptcy judge's account of the evidence is plausible in light of the record viewed in its entirety, this court may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.[5] "Where there are two permissible views of evidence, the factfinder's choice between them cannot be clearly erroneous."[6] On the other hand, this Court is not so limited when a bankruptcy judge's error is one of law consisting of giving wrong legal significance to the facts. Under these circumstances, this Court is free to make an independent determination of the law.[7]

## DISCUSSION ON STAYS

When a bankruptcy petition is filed, 11 U.S.C. § 362(a) of the Bankruptcy Code provides an automatic stay of actions taken to realize the value of collateral given by the debtor. For example, in the instant case, by Appellant filing a bankruptcy petition, Appellee's foreclosure action on Appellant's real property was automatically stayed. A bankruptcy court can grant relief from this type of stay under two conditions: (1) for cause, including the lack of adequate protection [8] of an interest in prop-

1. *Williamson v. Fireman's Fund Insurance Co.,* 828 F.2d 249, 251 (4th Cir.1987); Bankruptcy Rule 8013.

2. *In re Huntington, Ltd.,* 654 F.2d 578, 583 (9th Cir.1981); *Armstrong v. Corn Belt Bank,* 55 B.R. 755, 758 (C.D.Ill.1985).

3. *Anderson v. City of Bessemer,* 470 U.S. 564, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985); *Kidder Skis International v. Williams,* 60 B.R. 808, 809 (W.D.Mo.1985).

4. *Anderson,* 105 S.Ct. at 1511.

5. *Id.*

6. *Id.*

7. *Kidder Skis,* 60 B.R. at 809.

8. The phrase "adequate protection" in 11 U.S.C. § 362(d)(1) is explained in 11 U.S.C. § 361. This section reads as follows:

When adequate protection is required under section 362 ... of this title of an interest of an entity in property, such adequate protection may be provided by: (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under 362 of this title ... results in a decrease in the value of such entity's interest in such property; (2) providing to such entity an additional or replacement lien to the extent that such stay ... results in a decrease in the value of such entity's interest in such property; or (3) granting such other relief ... as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

erty of a party in interest; or (2) with respect to a stay of an act against property, if the debtor does not have an equity in such property (i.e., the creditor is undersecured) [9] and the property is not necessary to an effective reorganization. Thus, in the instant case, the bankruptcy judge had the power to grant Appellee relief from the stay if he found "cause," or if he found that Appellee was undersecured and the real property was not necessary to an effective reorganization. As discussed below, the bankruptcy judge was justified in granting Appellee relief from the stay under either theory.

## UNDERSECURED AND EFFECTIVE REORGANIZATION

■ One way in which a bankruptcy court may grant a creditor relief from a stay is provided in 11 U.S.C. § 362(d)(2). Under this section, if a creditor is (1) undersecured, and (2) there is no realistic prospect of an effective reorganization, then relief from the stay may be granted.[10] In the instant case, the facts show that Appellee was an unsecured creditor within the meaning of § 362(d)(2). Appellee was owed, according to the state circuit court, $14,918,141.76. The real property upon which Appellee had a security interest, however, was only worth $8,234,000.00.[11] Thus, the first requirement of granting relief pursuant to § 362(d)(2) was satisfied.

As to the second requirement of § 362(d)(2), the key word is "effective" reorganization. "What this requires is not merely a showing that if there is conceivably to be an effective reorganization, *that* [plan] *is in prospect.* This means ... that there must be a reasonable possibility of a successful reorganization within a reasonable time." [12] "The mere fact that the property is indispensable to the Debtor's survival is insufficient." [13] In the instant case, Appellant has failed to present competent evidence which supports Appellant's theory that there existed a realistic possibility of an effective reorganization. As Judge A. Jay Cristol stated in the Motion for Rehearing or Reconsideration held in this Case:

> In connection with this case, quite frankly, the Court has little confidence in the ability of this debtor to put together a successful reorganization based on two observations: One, the inability of the Debtor to even file proper papers in this case to this point; and two, the recollection of the appraisal information which the Court felt was based on dreams rather than realities to a point that if that's the type of thinking that's going on in this project, it doesn't appear that it can make it.[14]

Based on the foregoing, this Court finds that the Bankruptcy Judge was correct if

---

The phrase "indubitable equivalent" has developed "a well-settled meaning connoting the right of a secured creditor to receive present value of his security—thus requiring interest if the claim is to be paid over time." *United Savings Association v. Timbers of Inwood Forest,* 484 U.S. 365, 108 S.Ct. 626, 632, 98 L.Ed.2d 740 (1988). It has been held that an equity cushion in and of itself is legally sufficient to satisfy the adequate protection requirement of § 361 and would prevent the lifting of the automatic stay under § 362. *See, e.g, St. Petersburg Federal Savings and Loan Association v. Vincent,* 7 B.R. 866, 869 (M.D.Fla. 1980).

9. *United Savings Association v. Timbers of Inwood Forest,* 484 U.S. 365, 108 S.Ct. 626, 632, 98 L.Ed.2d 740 (1988).

10. The burden is upon the movant under § 362(d)(2) to establish that he is an undersecured creditor. However, it is the burden of the debtor to establish that the collateral at issue is necessary to effective reorganization. *Timbers*

*of Inwood Forest,* 108 S.Ct. at 632; 11 U.S.C. § 362(g).

11. *See Acquisition Corp. of America v. Federal Savings and Loan Insurance Corporation,* Case No. 88–6610—CIV–DAVIS, *Appendix to Appellant's Initial Brief* at A2–A3 (S.D.Fla. October 17, 1988).

12. *Timbers of Inwood Forest,* 108 S.Ct. at 632; *In re Bellina's Restaurants II, Inc.,* 52 B.R. 509, 512 (S.D.Fla.1985); *In re Albany Partners, Ltd.,* 749 F.2d 670, 673 n. 7 (11th Cir.1984).

13. *Bellina's Restaurants II, Inc.,* 52 B.R. at 512; *Albany Partners, Ltd.,* 749 F.2d at 673 n. 7; *In re Discount Wallpaper Center, Inc.,* 19 B.R. 221, 222 (M.D.Fla.1982).

14. *In re Acquisition Corp. of America,* Case No. 87–04707—BKC–AJC, *Motion for Rehearing or Reconsideration* at 14–16 (Bankruptcy Court S.D.Fla. February 29, 1988).

he granted Appellee relief from the stay pursuant to § 362(d)(2).

## GRANTING RELIEF FROM A STAY FOR CAUSE

■ A second way in which an automatic stay may be terminated is when a bankruptcy petition is filed in bad faith.[15] There is no particular test for determining whether a debtor has filed a petition in bad faith. Instead, "the courts may consider any factors which evidence 'an intent to abuse the judicial process and the purposes of the reorganization provisions' or, in particular, factors which evidence that the petition was filed to 'delay or frustrate the legitimate efforts of secured creditors to enforce their rights.' "[16] For example, the following factors have been used to determine whether a bankruptcy petition was filed in bad faith: (1) Is there a realistic possibility of an effective reorganization? (2) Does the debtor only possess a few assets? (3) Does the debtor only have a few unsecured creditors whose claims are small in relation to the claims of secured creditors? (4) Does the debtor have few employees? (5) Is the Debtor's property subject to a foreclosure action as a result of arrearages on the debt? (6) Does the Debtor's financial problems involve essentially a dispute between the Debtor and the Secured Creditors which can be resolved in a pending State Court Action? and (7) Is the timing of the Debtor's filing evidence of an intent to delay or frustrate the legitimate efforts of the Debtor's Secured Creditors to enforce their rights?[17] This list of factors is not exhaustive; nor is there any single factor that will necessarily lead to a finding of bad faith.[18]

■ In the instant case, if the bankruptcy court granted Appellee relief from the stay because Appellant failed to file a petition in bankruptcy in good faith, this ruling was not "clearly erroneous." As the facts show, Appellant filed a bankruptcy petition a day before it would have defaulted on an $8,192,250.00 debt owed to a secured creditor which resulted from arrearages on a debt. Appellant only owned one substantial asset, the land upon which Appellee foreclosed, and only three claims were filed in this Chapter 11 proceeding.[19] Thus, Appellant's financial problems involved essentially a dispute between Appellant and Appellee which could have been resolved, as it was, in a State Court Action. Finally, as stated above the record shows that Appellant failed to present competent evidence which supported Appellant's theory that there existed a realistic possibility of an effective reorganization.

Based on the foregoing, it is hereby

ORDERED AND ADJUDGED that the Bankruptcy Judge's Order Granting Appellee Relief from the Stay is AFFIRMED.

DONE AND ORDERED.

---

15. *Phoenix Piccadilly, Ltd. v. Life Insurance Co. of Virginia* 849 F.2d 1393, 1394 (11th Cir.1988); *Natural Land Corp. v. Baker Farms, Inc.*, 825 F.2d 296, 297–98 (11th Cir.1987); *Albany Partners, Ltd.*, 749 F.2d at 674.

16. *Phoenix Piccadilly*, 849 F.2d at 1394; *Baker Farms, Inc.*, 825 F.2d at 298.

17. *Phoenix Piccadilly*, 849 F.2d at 1394–95; *Baker Farms, Inc.*, 825 F.2d at 298; *In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir.1984).

18. *Baker Farms, Inc.*, 825 F.2d at 298.

19. One claim is Appellant's $14,918,141.76 claim, and the other two which are disputed, only add up to approximately $160,000.00.