### In re Abraham David GOSMAN, Debtor.

### Joseph J. Luzinski, Chapter 7 Trustee for the Estate of Abraham D. Gosman, Appellant,

v.

### Peabody & Arnold LLP and Joel Reinstein, P.A., Appellees.

No. 07–80475–CIV.

United States District Court, S.D. Florida.

Dec. 13, 2007.

Curtis Carlson, Esq., & Ronald J. Lewittes, Esq., Miami, FL, for Appellant, Joseph J. Luzinski.

Philip Glatzer, Esq., Marlow, Connell, Valerius, Abrams, Adler, Newman & Lewis, Coral Gables, FL, for Appellee, Peabody & Arnold, LLP.

## ORDER AFFIRMING BANKRUPTCY COURT'S ORDER; DISMISSING APPEAL; AS CLOSING CASE

ALAN S. GOLD, District Judge.

THIS CAUSE comes before the Court on Appellant Luzinski's appeal of the Bankruptcy Court's Order (the "Order") dated March 9, 2007 granting Appellee Peabody & Arnold's ("Peabody") Motion for Reconsideration and Dismissing Counts I, III, and IV of the Second Amended Complaint. As explained in more detail below, Trustee Luzinski appeals the Bankruptcy Court's dismissal of Count I based on the in pari delicto doctrine. Because the other Counts were dismissed on alternative grounds that were not appealed, the only Count at issue on this appeal is Count I of the Second Amended Complaint.

### I. Background and Order on Appeal

The Order on appeal here resulted in the dismissal of an adversary proceeding, Adv. No. 03–3228–BKC–AHF–A, against the law firm of Peabody & Arnold brought by the Trustee in connection with the bankruptcy case of Mr. Gosman, Case No. 01–30953–BKC–SHF. Specifically, the Order on appeal dismissed the Trustee's claims for professional malpractice against Peabody & Arnold (Count I), conspiracy to defraud creditors against Peabody & Arnold (Count III), and conspiracy to commit fraudulent asset conversion (Count IV). The Trustee brought those claims to recover damages on behalf of Mr. Gosman's estate in connection with Peabody's allegedly negligent acts and omissions in the legal services provided by Peabody to Mr. Gosman. As explained in the Order on appeal,

> On October 10, 1999, Mr. and Ms. Gosman executed an amendment to their antenuptial agreement whereby Mr. Gosman conveyed a one-half fee interest in the real property located at 513 North Country Road, Palm Beach, Florida, together with a one-half interest in the artwork and furnishings located upon the referenced premises, to Mr. and Ms. Gosman as tenants by the entirety. Additionally, $2 million in cash was transferred to Ms. Gosman. The amendment stated that the transfers were in consideration for Ms. Gosman's waiver of her right to pursue remedies resulting from Mr. Gosman's alleged default under their original antenuptial agreement. The amendment was prepared by Reinstein and Vigoda [a former partner of Peabody]. On March 2, 2001, Mr. Gosman filed a voluntary petition under Chapter 11. On June 25, 2002, Mr. Gosman converted the case to a Chapter 7 proceeding. On July 1, 2002, Joseph J. Luzinski was appointed chapter 7 trustee for Mr. Gosman.

Order at 2–3.

Bankruptcy Judge Friedman dismissed Counts I, III and IV under the doctrine of in pari delicto, based on a Bankruptcy Court order in a separate adversary proceeding which found that the Debtor, Mr. Gosman, acted with intent to defraud creditors when transfers were made between Mr. Gosman and Ms. Gosman. Order at 4 (citing March 1, 2005 Order by Judge

Lessen in *Luzinski v. Gosman,* No. 02–3155 BKC–SHF–A).

## A. *The Trustee's adversary proceeding against Mr. and Mrs. Gosman*[1]

 This separate adversary proceeding, Adv. No. 02–3155, was brought by the Trustee, Joseph J. Luzinski, against Mr. and Mrs. Gosman in Bankruptcy Court within the context of the same underlying bankruptcy case of Mr. Gosman. In adversary proceeding 02–3155, the Trustee objected to exemptions claimed by the Debtor, Mr. Gosman, and sought to have the Debtor's transfers voided as fraudulent transfers. In the Third Amended Complaint for that proceeding, the Trustee makes the following allegations:

(1) "In truth, the alleged events of default [of the Antenuptial Agreement] were a sham, along with the purported ongoing negotiations between Gosman and Castre Gosman, all of which were intended to create the illusion that Gosman and Castre–Gosman were engaged in arm's length negotiations regarding an amendment to the 1996 Antenuptial Agreement when, in fact, they were engaging in a pre-mediated, concerted effort to hinder, delay or defraud creditors by shielding Gosman's assets from the reach of third party creditors." Third Am. Compl. ¶ 59.

(2) "With the foregoing financially devastating events as the backdrop, Gosman, with the active participation and assistance of lawyers and other professionals that are not parties to this ac-

tion, began engaging in systematic a nd significant 'estate planning' transfers. Although these questionable transfers are now being characterized by the Debtor and Castre–Gosman as arm's length negotiations with the purpose of amending the 1996 Antenuptial Agreement, the true purpose of these transactions was much more sinister and self-serving-to remove otherwise non-exempt assets from the reach of non-insider, third party creditors, and to 'park' such assets with Castre–Gosman under the cloak and purported safe harbor of tenants by the entireties property, which property is listed in Schedule 'C' of the Debtor's bankruptcy schedules." Third Am. Compl. ¶ 69.

(3) "Further, in a letter dated July 29, 1999, one day prior to the North County Road Transfer, Gosman notified the trustee for the Marital Trust, Robert Vigoda, to transfer all shares held in trust to Gosman. The July 29th letter was sent to attempt to 'paper the file' by fabricating an event of default under the 1996 Antenuptial Agreement because, prior to July 29th, no default existed." Third Am. Compl. ¶ 73.

(4) "Even more troubling, however, is that Gosman's counsel never independently inquired or investigated whether there were in fact any events of default under the 1996 Antenuptial Agreement. These are not the actions of an attorney that is zealously representing the interests of this client and, based upon the limited scope of the representation as

---

1. I consider the Third Amended Complaint and the Opinion dated March 1, 2005 in the separate adversary proceeding brought by the Trustee against Mr. And Mrs. Gosman for the purposes of collateral estoppel, judicial admissions, and judicial estoppel, as discussed further in this Order. *See Cohen v. Bucci,* 905 F.2d 1111, 1112 (7th Cir.1990) ("Adversary proceedings in bankruptcy are not distinct

pieces of litigation; they are components of a single bankruptcy case.") The Third Amended Complaint and the Order dated March 1, 2005 are part of the record on appeal in this instant case, and to the extent necessary, I also take judicial notice of these documents as matters of public record. *See Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1280 (11th Cir. 1999).

conveyed by Gosman, this approach was clearly endorsed by and done with the approval of Gosman." Third Am. Compl. ¶ 77(a).

(5) "Although multi-millions of dollars in assets were at stake (the lion's share of which were owned by Gosman), the 1999 Antenuptial Amendment was drafted solely by Castre–Gosman's counsel and was not presented to Gosman's counsel for his review until *after* all of the material terms of the agreement had already been negotiated and written up between the parties. At best, Gosman's counsel was no more than a 'rubber stamp' for a deal that had already been negotiated and drafted, which are not the actions of someone whose client is truly engaged in an arm's length negotiation." Third Am. Compl. ¶ 77(b) (emphasis in original).

(6) "According to Gosman's counsel, Gosman expressly limited the scope of the attorney's representation in reviewing the proposed 1999 Antenuptial Amendment, although this limitation was not documented in any memorandum by the attorney to the file or confirming letter to the client. Again, these are not the actions of someone whose client truly wants his rights and interests to be preserved in a contested negotiation." Third Am. Compl. ¶ 77(c).

(7) "Thus, as evidenced by the above acts and omissions, among others, the purported 'settlement' of Castre–Gosman's allegations of default regarding the 1996 Antenuptial Agreement was no more than an orchestrated sham by Gosman, Castre–Gosman, and their respective counsel so as to enable nonexempt assets to be transferred to allegedly exempt status, outside the reach of creditors." Third Am. Compl. ¶ 78.

(8) "Thus, the Debtor, while insolvent and/or facing the existing or imminent collapse of his financial empire, through the Artwork Transfer and the North County Road Property Transfer, decided to shelter his most valuable and prized assets (valued, on paper, at over $50 million) from his non-insider third party creditors by transferring such assets to a woman he believed to be his wife of three years in exchange for her agreement not to sue him under a contingent obligation of, at best, no greater than $5 million." Third Am. Compl. ¶ 81.

(9) "The Debtor made the North County Road Property Transfer to Castre–Gosman with the actual intent to hinder, delay or defraud a creditor of the Debtor, including Chase." Third Am. Compl. ¶ 102.

(10) "The Debtor made the Artwork Transfers to Castre–Gosman with the actual intent to hinder, delay or defraud a creditor of the Debtor, including Chase." Third Am. Compl. ¶ 112.

(11) "The Blossom Transfer was made with actual intent to hinder, delay or defraud a creditor of the Debtor." Third Am. Compl. ¶ 124.

(12) "The Debtor made the Bank Account Transfers to Castre–Gosman with the actual intent to hinder, delay or defraud a creditor of the Debtor" Third Am. Compl. ¶ 135.

(13) "The Debtor made the Prepetition Money Market Transfer to Castre–Gosman with the actual intent to hinder, delay or defraud a creditor of the Debtor." Third Am. Compl. ¶ 146.

Following a trial in the above adversary proceeding brought by the Trustee against the Gosmans, Bankruptcy Judge Lessen voided the transfers under 11 U.S.C. 548, 11 U.S.C. 544(b)(1) and Section 726.105(1)

of the Florida Statutes.[2]

Judge Lessen determined that Mr. Gosman, the Debtor, made the transfers with actual intent to hinder, delay or defraud creditors under both Federal and Florida law. 11 U.S.C. § 548(a)(1)(A); Fla. Stat. § 726.105(1). Specifically, the Lessen Order states the following:

> Applying the badges of fraud to the facts in this proceeding, the Court finds that the transfers at issue were made with actual intent to hinder, delay, or defraud creditors.

Lessen Order at 31.

> Based on the foregoing, the Court find that the challenged transfers—the North County Road transfer of July 30, 1999, the artwork and furnishings transfer of October 10, 1999, the $2 million

transfer of October 10, 1999, the Blossom transfer of November 14, 2000, the $3.1 million transfer of the Gulfstream proceeds, the February 5, 2001 transfer of $600,000—were made with the actual intent to hinder, delay, and defraud creditors. The transfers were constructively fraudulent. Ms. Gosman did not provide reasonably equivalent value in exchange for the transfers, and Mr. Gosman was insolvent at the time of each of the transfers. Moreover, Mr. Gosman was not paying his debts as they came due at the time of each of the transfers, and each transfer deepened Mr. Gosman's insolvency. The transfers had the added effect of leaving Mr. Gosman with inadequate capital. Therefore, all of the transfers are avoided under Fla. Stat.

---

2. The relevant part of 11 U.S.C. § 548(a)(1) provides:

(a)(1) The trustee may avoid any transfer of an interest of the debtor in property, of any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(A) made such transfer or incurred such obligation with *actual intent to hinder, delay, or defraud* any entity to which the debtor was or become, on or after the date that such transfer was incurred, indebted; or ... (emphasis added).

The relevant part of 11 U.S.C. § 544(b) provides:

(b)(1) Except as provides in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

(2) Paragraph (1) shall not apply to a transfer of a charitable contribution (as that term is defined in section 548(d)(3)) that is not covered under section 548(a)(1)(B), by reason of section 548(a)(2). Any claim by any person to recover a transferred contribution described in the preceding sentence under Federal or State law in a Federal or State court shall be preempted by the commencement of the case.

In applying 11 U.S.C. § 544(b), the Bankruptcy Court held that "[i]n order to take advantage of Section § 544(b), the trustee must demonstrate (i) the existence of an actual creditor; (ii) with an allowable claim; (iii) who, under non-bankruptcy law, could avoid all or part of the transfer." Lessen Order at 28 (citing *In re Scott Wetzel Servs., Inc.*, 293 B.R. 791, 794 (Bankr.M.D.Fla.2003)). According to the Lessen Order, the applicable non-bankruptcy law referenced above includes the Florida statute on fraudulent transfers, Section 726.105(1) of the Florida Statutes. Judge Lessen further explained that the Florida statute has similar elements to the federal statute on fraudulent transfers, 11 U.S.C. § 548, but the Florida statute is not limited to transfers which take place within one year of the date of filing of the petition. Lessen Order at 28–29. Section 726.105(1) of the Florida Statutes provides:

(1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(a) *With actual intent to hinder, delay, or defraud* any creditor of the debtor; or... (emphasis added)

§ 726.105. In addition, the Blossom transfer, the $3.1 million transfer of the Gulfstream proceeds, and the February 5, 2001, transfer are avoided under Section 548 of the Bankruptcy code because they occurred within one year of the petition date.

Lessen Order at 42.

As previously determined, Mr. Gosman transferred property to himself and Mrs. Gosman as tenants by the entirety with the intent to hinder, delay, or defraud creditors.

Lessen Order at 44.

B. *The Trustee's allegations in the adversary proceeding against Peabody & Arnold*

The adversary proceeding on appeal was brought by the Trustee against the law firm of Peabody & Arnold and Joel Reinstein. The Second Amended Complaint includes the following counts: (1) professional malpractice against Peabody and Vigoda (Count I); professional malpractice against Reinstein (Count II); (3) conspiracy to defraud creditors (Count III); conspiracy to commit fraudulent asset conversion (Count IV); conspiracy to breach fiduciary duty (Count V); and aiding and abetting a breach of fiduciary duty (Count VI). The only Count at issue in this appeal is Count I, and the Trustee makes the following allegations in support of that claim:

52. Peabody breached the duties it owed and failed to protect the interests of the Debtor by, among other things:

(1) negligently failing to advise Gosman that he was not in default of the Antenuptial Agreement as he had in fact funded the Marital Trust;

(2) negligently failing to advise Debtor that alternative methods to fund the Marital Trust were available to him;

(3) negligently failing to advise Debtor that no consideration existed for the transfers of the artwork and $2 million in cash to Mrs. Gosman in light of the prior deeding of the North County Road property to ownership by tenancy by the entireties;

(4) failing to scrutinize and disclose to Debtor that the actions he was undertaking constituted fraudulent conveyances, fraudulent asset conversions, and breaches of fiduciary duty which would block any discharge of the Debtor in the event of a subsequent bankruptcy filing; and

(5) failing to withdraw from representing Debtor.

Second Am. Compl. ¶ 52.

In support of Count III for conspiracy to defraud, the Trustee makes the following allegation:

78. Each of the Defendants conspired with each other and with Mr. Gosman and Mrs. Gosman to accomplish the breaches of fiduciary duty that Mr. Gosman owed to his creditors. Moreover, without the assistance and participation of the Defendants, no breach of fiduciary duty would have occurred.

Second Am. Compl. ¶ 78.

In addition, the Trustee included the following determinations by Judge Lessen in the allegations in its Second Amended Complaint:

47. On March 1, 2005, the United States District Court for the Southern District of Florida entered an opinion finding that the transfers of the North County Road property, the artwork on October 10, 1999, the $2 million on October 10, 1999, the $3.1 million from the sale of the

Gulfstream III, and $600,000 on February 5, 2001, were made with actual intent to hinder, delay and defraud creditors at a time the Debtor was insolvent. The Court also found that the transfers were constructively fraudulent. The Court also found that the transfers of assets from Mr. Gosman into ownership between Mr. Gosman and Mrs. Gosman as tenants by the entireties violated the Florida Fraudulent Asset Conversion Statute, Section 222.30, Florida Statutes.

48. On March 1, 2005, pursuant to the Opinion, the Court entered judgment avoiding the transfers and ordering a turn over to the Trustee and awarding compensatory damages against Mrs. Gosman in the amount of $66,539,181.01.

Second Am. Compl. ¶¶ 47–48.

### C. The ruling by the Bankruptcy Court and the issues on appeal

As stated above, the Bankruptcy Judge dismissed Counts I, III and IV under the doctrine of in pari delicto, based on the ruling in the adversary proceeding brought by the Trustee against Mr. and Mrs. Gosman. The Bankruptcy Judge also dismissed Counts III and IV for the additional reason that Florida does not recognize an independent action for conspiracy. According to the Order, the Trustee's Second Amended Complaint did not allege an actionable underlying tort or wrong which could provide the basis for the Trustee's claims for conspiracy, and therefore Counts III and IV failed to state a claim upon which relief could be granted. Order at 5.

The Bankruptcy Court had previously dismissed Counts V and VI, and on May 17, 2007, the Bankruptcy Court approved the settlement of Count II against Joel Reinstein. Therefore, no claims remain in the Second Amended Complaint.

The Trustee appeals the Bankruptcy Court's Order here, and argues that (1) an attorney who provides negligent advice to a client should not be relieved of liability where the client did not seek advice on how to violate the law or defraud creditors; and (2) the in pari delicto doctrine requires a fact-based review and a determination that the parties were at equal fault, and this issue cannot be resolved on a motion to dismiss. Initial Br. at 13.

Because the Trustee's briefs only address the Bankruptcy Court's rulings on the in pari delicto doctrine, and not its rulings on the conspiracy claims, I address only whether the Bankruptcy Court erred in dismissing Count I under the in pari delicto doctrine. I do not address the Bankruptcy Court's dismissal of Counts III and IV because those Counts were dismissed for the additional reason that the Trustee had not alleged an actionable tort or wrong which could provide the basis for its conspiracy claims.

### II. Standard of review

District courts sit as appellate courts over bankruptcy decisions. Miner v. Bay Bank & Trust Co. (In re Miner), 185 B.R. 362, 365 (N.D.Fla.1995), aff'd, 83 F.3d 436 (11th Cir.1996). A district court reviews a bankruptcy court's legal conclusions de novo, In re Englander, 95 F.3d 1028, 1030 (11th Cir.1996), and a bankruptcy court's factual findings for clear error, Fed. R. Bankr.P. 8013; In re Gamble, 168 F.3d 442, 444 (11th Cir.1999).

When district courts review the factual findings of a bankruptcy court, the burden of showing that the bankruptcy court's findings are clearly erroneous is upon the appellant. Acquisition Corp. of

*Am. v. Fed. Sav. & Loan Ins. Corp.*, 96 B.R. 380, 382 (S.D.Fla.1988). A finding of fact is not clearly erroneous unless "this court, after reviewing all the evidence, is left with the definite and firm conviction that a mistake has been committed." *IBT Int'l, Inc. v. N. (In re Int'l Admin. Serv., Inc.)*, 408 F.3d 689, 698 (11th Cir.2005) (internal citations omitted).

### III. *Discussion*

■ In the Eleventh Circuit, in order to dismiss a complaint with prejudice, a court must determine that even an amended complaint could not state a claim. *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1213 (11th Cir.2001) ("[I]f a more carefully drafted complaint could not state a claim, dismissal with prejudice is proper.") (internal quotations omitted).

A. *The Bankruptcy Court properly dismissed Count I based on in pari delicto.*

■ Here, I review the Bankruptcy Court's application of the *in pari delicto* doctrine *de novo*, accepting all factual allegations as true and construing them in the light most favorable to the Trustee. *Powell v. Barrett*, 496 F.3d 1288, 1304 (11th Cir.2007). The doctrine of *in pari delicto* is an affirmative defense and an equitable defense, *May v. Nygard Holdings Ltd.*, 2007 WL 2120269, *4 (M.D.Fla. July 20, 2007) (citing *Nisselson v. Lernout*, 469 F.3d 143, 151 (1st Cir.2006)), and a complaint can be dismissed on an affirmative defense when "the allegations in the complaint, on their face, show that an affirmative defense bars recovery on the claim." *Powell*, 496 F.3d at 1304; *see Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1277 (11th Cir.2004) ("[T]he Florida courts have also made it abundantly clear that any affirmative defense . . . may be considered in resolving a motion to dismiss when the

complaint affirmatively and clearly shows the conclusive applicability of the defense to bar the action.") (internal quotations omitted).

■ Federal bankruptcy law controls the rights and interests of a bankruptcy trustee. *Official Committee of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1149–1150 (11th Cir. 2006) As the representative of an estate, the trustee "succeeds into the rights of the debtor-in-bankruptcy and has standing to bring any suit that the debtor corporation could have brought outside of bankruptcy." *Edwards*, 437 F.3d at 1149. The debtor estate "includes all legal or equitable interests of the debtor as of the commencement of the case." *Id.* at 1150 (citing 11 U.S.C. 541(a)). Because the trustee does not acquire greater interests or rights than the debtor, "[i]f a claim of [the debtor] would have been subject to the defense of *in pari delicto* at the commencement of the bankruptcy, then the same claim, when asserted by the trustee, is subject to the same affirmative defense." *Edwards*, 437 F.3d at 1150, 1152 ("The equitable defense of *in pari delicto* is available in an action by a bankruptcy trustee against another party if the defense could have been raised against the debtor."); *O'Halloran v. PricewaterhouseCoopers LLP*, 969 So.2d 1039, 1046–47 (2d DCA 2007). Therefore, the Trustee stands in the shoes of the Debtor, Mr. Gosman, and the defense of *in pari delicto* will bar the Trustee's action against Peabody if it could have been raised against the Debtor.

■ Because the Trustee's claim in Count one is a state law negligence or malpractice claim, Florida law applies in determining what defenses may be asserted against the Trustee. *Tolz v. Proskauer Rose (In re Fuzion Techs. Group, Inc.)*, 332 B.R. 225, 234 (Bankr.S.D.Fla.2005). Under Florida law, the doctrine of *in pari*

*delicto* operates to bar legal remedies when both parties are equally in the wrong, *May*, 2007 WL 2120269, at *4 (citing *Turner v. Anderson*, 704 So.2d 748 (4th DCA 1998)), or where the plaintiff had greater responsibility for the wrongdoing than defendant. *O'Halloran*, 969 So.2d at 1043–45 ("In its classic formulation, the *in pari delicto* defense was narrowly limited to situations where the plaintiff truly bore at least substantially equal responsibility for his injury.")

Furthermore, "[e]ven if the parties did not participate in the *same* wrongdoing, Florida also follows a general principle that no one shall be permitted to profit by his own fraud, or take advantage of his own wrong, or found any claim upon his own iniquity, or profit by his own crime." *May*, 2007 WL 2120269, at *4 (emphasis in original). In determining whether *in pari delicto* applies, "a courts first determines whether the plaintiff's guilt is far less in degree than defendant's, so as to make the doctrine inapplicable. If plaintiff's guilt is not far less, the court inquires if applying the doctrine would be contrary to public policy." *Id.* (quoting *Turner*, 704 So.2d at 750).

Here, the Trustee alleges in its Second Amended Complaint that the Debtor, Mr. Gosman, was found to have acted with actual intent to defraud his creditors when he transferred assets to Mrs. Gosman. Therefore, Mr. Gosman's fraud appears on the face of the complaint. Because the Trustee stands in the shoes of the Debtor, I must determine whether this fraud would bar a claim by the Debtor against Peabody for negligence.

In determining whether the doctrine of *in pari delicto* applies under Florida law, I first determine whether the Debtor's guilt is far less in degree than Peabody's, based on the allegations in the Second Amended Complaint. According to the allegations, the Debtor acted with actual intent to de-fraud while Peabody was only negligent, and therefore I find that the Debtor's guilt is not far less than Peabody's. Second, I find no reason why applying the doctrine of *in pari delicto* in this case would be contrary to public policy.

Based on the allegations in the Second Amended Complaint, the Debtor's guilt is clearly at least as great as Peabody's, and therefore this can be resolved on a motion to dismiss. *See Edwards*, 437 F.3d at 1156 (resolving on a motion to dismiss whether doctrine of *in pari delicto* barred plaintiff's claims); *Terlecky v. Hurd (In re Dublin Secs.)*, 133 F.3d 377, 380 (6th Cir. 1997) (affirming dismissal of negligence and fraud claims on basis of *in pari delicto* where the complaint "concedes, for example, that the debtors [plaintiffs] intentionally defrauded their investors. Such purposeful conduct thus establishes conclusively that the debtors were *at least* as culpable as the defendants in this matter.") (emphasis in original). The actual fraud of Mr. Gosman is more objectionable than the alleged negligence of Peabody. *Banco Nacional de la Vivienda v. Cooper*, 680 F.2d 727, 730 (11th Cir.1982) ("[W]hen the choice is between the two—fraud and negligence—negligence is less objectionable than fraud."); *Besett v. Basnett*, 389 So.2d 995, 998 (Fla.1980) (stating that "negligence is less objectionable than fraud"). Because the Trustee has no greater rights or interests than the Debtor, the doctrine of in pari delicto bars the Trustee's claim for negligence against Peabody. Therefore, I affirm the Bankruptcy Court's dismissal of Count I of the Second Amended Complaint based on the doctrine of in pari delicto.

B. *The Trustee is precluded by collateral estoppel from attempting to relitigate whether Mr. Gosman intended to defraud creditors.*

Although the Trustee argues that the *in pari delicto* doctrine should not

have been applied on a motion to dismiss because the Trustee should have been allowed an opportunity to show that Peabody was more at fault than Mr. Gosman, I reject this argument on the alternative ground of collateral estoppel. In determining whether collateral estoppel applies against the Trustee, "federal preclusion principles apply to prior federal decisions, whether previously decided in diversity or federal question jurisdiction." *EEOC v. Pemco Aeroplex, Inc.*, 383 F.3d 1280, 1285 (11th Cir.2004); *see CSX Transp., Inc. v. Bhd. of Maint. of Way Employees*, 327 F.3d 1309, 1316 (11th Cir.2003) ("We previously held that when a federal court sitting in diversity examines the collateral estoppel or res judicata effect of a prior federal judgment, based either on diversity or a federal question, it must apply federal common law.") (internal quotations omitted). I apply federal law because the prior decision at issue is the federal bankruptcy court's March 7, 2005 order.[3]

▆▆▆▆ Under the law of this Circuit, "collateral estoppel bars relitigation of an issue previously decided if the party against whom the prior decision is asserted had 'a full and fair opportunity' to litigate the issue in an earlier case." *United States v. Weiss*, 467 F.3d 1300, 1308 (11th Cir.2006). In order to apply collateral estoppel, the party seeking to invoke the doctrine must establish that "(1) the issue in the pending case is identical to that decided in a prior proceeding; (2) the issue

was necessarily decided in the prior proceeding; (3) the party to be estopped was a party or was adequately represented by a party to the prior proceeding; and (4) the precluded issue was actually litigated in the prior proceeding." *Id.* Furthermore, the application of collateral estoppel is proper on a motion to dismiss where the existence of collateral estoppel can be judged from the face of the complaint. *See Harley v. Health Center of Coconut Creek, Inc.*, 518 F.Supp.2d 1364, 1367–68 (S.D.Fla.2007) (citing *Concordia v. Bendekovic*, 693 F.2d 1073, 1075 (11th Cir.1982)).

▆▆▆▆ First, I find that the issue in the instant adversary proceeding is identical to the issue decided in the prior adversary proceeding against Mr. and Mrs. Gosman. In the prior proceeding, the Bankruptcy Court determined after trial that Mr. Gosman had transferred assets to Mrs. Gosman with the actual intent to defraud creditors. In the instant adversary proceeding, the Trustee alleges that Peabody is liable for negligently advising Mr. Gosman on matters involving and leading up to his transfers to Mrs. Gosman. Although the Trustee attempts to frame the issues in a way that distinguishes them from the issues already decided in the prior adversary proceeding against Mr. and Mrs. Gosman, the issues are identical. The position the Trustee takes in this case—that Mr. Gosman would have acted differently if not for the negligent advice of his lawyers[4]—would by necessity un-

---

**3.** Although the Bankruptcy Court did not base its decision to dismiss the claims against Peabody on the doctrine of collateral estoppel, I note that the argument was made before the Bankruptcy Court. *See* Transcript of November 28, 2006 hearing at 21. Furthermore, I may affirm on any ground supported by the record. *Bircoll v. Miami–Dade County*, 480 F.3d 1072, 1088 n. 21 (11th Cir.2007).

**4.** The Trustee argues in its Initial Brief that "[t]hese allegations and others in the Second

Amended Complaint are not premised upon the advice to transfer assets which a court has found constituted fraudulent transfers. Instead, they are premised upon *negligent advice given by the lawyers in advance of such transfers which, if properly given, would have been heeded, would have prevented the fraudulent transfers from having taken place.*" Initial Br. at 17 (emphasis added). The Trustee also argues "if the evidence were to show, for example, that the Peabody recommended cer-

dermine the prior court's determination that Mr. Gosman acted with actual intent to defraud. Therefore, I find that Peabody sufficiently established that the issues are identical, thus satisfying the first factor in the collateral estoppel analysis.

Second, I must determine whether the issue of Mr. Gosman's intent to defraud was necessarily decided in the prior proceeding. Because intent to defraud is an element required for a finding that a debtor has fraudulently transferred assets, *see* 11 U.S.C. § 548(a)(1); Fla. Stat. § 726.105(1), I find that the second factor for collateral estoppel is also established. Indeed, both the federal and Florida laws on fraudulent transfers require a finding that the debtor had intent to defraud creditors. Because intent to defraud was an required element of the claim for fraudulent transfers brought against Mr. and Mrs. Gosman, the issue of intent to defraud was necessarily decided by the Bankruptcy Court in the prior proceeding when it voided Mr. Gosman's transfers under both Federal and Florida law.

With respect to the third factor, the party to be estopped here is the Trustee, standing in the shoes of the Debtor. The Trustee was not only a party to the prior proceeding; the Trustee initiated the prior adversary proceeding and succeeded in having the Debtor's transfers voided as fraudulent. The Debtor was a defendant in that adversary proceeding and therefore was also a party. For the purposes of this analysis, the Trustee stands in the shoes of the Debtor, as discussed previously in this order. *See Martin v. Pahiakos (In re Martin)*, 490 F.3d 1272, 1277 (11th Cir. 2007) ("Third, it is beyond dispute that the parties in both cases are identical. Al-

though the trustee stood in the shoes of [the debtor] during this phase of the litigation, that is no impediment to considering the parties identical in the res judicata analysis.") Therefore, I find that the third factor is satisfied because the Trustee, standing in the shoes of the Debtor, was a party to the prior proceeding.

Fourth, I must determine whether the precluded issue was actually litigated in the prior proceeding. In the prior adversary proceeding against Mr. and Mrs. Gosman, the Bankruptcy Court issued its order voiding the transfers after a trial. Because intent to defraud is an element required for a determination of fraudulent transfer, this trial involved precisely the issue of whether Mr. Gosman acted with intent to defraud creditors when he transferred assets to Mrs. Gosman. The Court found that Mr. Gosman did act with intent to defraud, and therefore, I find that the fourth and final factor required for collateral estoppel is satisfied.

Because I find that the factors required for collateral estoppel are satisfied, I conclude that the Trustee is estopped or precluded from arguing that Mr. Gosman would have acted differently if not for the allegedly negligent advice of Peabody. This argument, by necessity, contradicts the prior determination that Mr. Gosman acted with actual intent to defraud creditors when he transferred assets to Mrs. Gosman.

Therefore, it was entirely appropriate to resolve the Trustee's claims against Peabody on a motion to dismiss. Assuming the validity of the Trustee's allegations of negligence against Peabody, the Trustee's claims for negligence must be dismissed

tain strategies and transactions, advised Mr. Gosman to engage in such actions, did not advise Mr. Gosman that the strategies suggested were unlawful, and Mr. Gosman did not know or failed to appreciate that the transactions were unlawful, Mr. Gosman's decree [sic] of fault would not be as great as that of Peabody." Initial Br. at 21.

based on in pari delicto. Mr. Gosman transferred his assets with actual intent to defraud his creditors and, as discussed previously, Mr. Gosman's actual intent to defraud outweighs Peabody's alleged negligence. Because Mr. Gosman's degree of fault is clearly greater, I conclude that the Bankruptcy Court correctly dismissed the claims based on the doctrine of in pari delicto. Therefore, I affirm the dismissal of Count I based on the additional ground of collateral estoppel.

C. *The Trustee is judicially estopped from taking position contrary to former position regarding the actions and involvement of Mr. Gosman's lawyers.*

Under the doctrine of judicial estoppel, "where a party assumes a certain position in a legal proceeding and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Allapattah Servs., Inc. v. Exxon Corp.*, 372 F.Supp.2d 1344, 1367 (S.D.Fla.2005) (citing *New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001)). The doctrine is used to prevent "a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Allapattah Servs.*, 372 F.Supp.2d at 1367 (citing *New Hampshire*, 532 U.S. at 749, 121 S.Ct. 1808). Thus, "[j]udicial estoppel is an equitable doctrine invoked at a court's discretion, designed to protect the integrity of the judicial process." *Stephens v. Tolbert*, 471 F.3d 1173, 1177 (11th Cir.2006).

The adversary proceeding brought by the Trustee against Mr. and Mrs. Gosman and the adversary proceeding brought by the Trustee against Peabody occur within the same bankruptcy case—the bankruptcy case of Mr. Gosman. *See Educ. Credit Mgmt. Corp. v. Mersmann (In re Mersmann)*, 505 F.3d 1033, 1043 (10th Cir.2007) ("An adversary proceeding is a subpart of a bankruptcy case that has all the trappings of civil litigation."); *In re Caldor Corp.*, 303 F.3d 161, 168–169 (2d Cir.2002) ("Black's [Law Dictionary] indicates that a bankruptcy proceeding is a 'particular dispute or matter arising within a pending case—as opposed to the case as a whole.'"); *Cohen v. Bucci*, 905 F.2d 1111, 1112 (7th Cir.1990) (stating that "[a]dversary proceedings in bankruptcy are not distinct pieces of litigation; they are components of a single bankruptcy case" and suggesting that law of the case may have applied but was not raised by the parties); *see also Martin v. Pahiakos (In re Martin)*, 490 F.3d 1272, 1275 (11th Cir.2007) (stating that order is appealable if it resolves "a particular adversary proceeding or controversy rather than the entire bankruptcy litigation") (internal quotations omitted); *Christo v. Padgett*, 223 F.3d 1324 (11th Cir.1990) (in determining whether denial of remand was reviewable based on filing dates for "cases" in statute, court considered the filing date of bankruptcy petition, as opposed to the filing date of the civil case that was removed); *In re Terminal Cash Solutions, LLC*, 2007 WL 2774258, *1 (Bkrtcy.S.D.Fla. Sept.23, 2007) ("a single bankruptcy case may have many different contested matters and adversary proceedings that are individually dealt with before the case is closed.") Therefore, for the purposes of judicial estoppel, I consider the whether the doctrine should be applied to prevent the Trustee from prevailing in the prior adversary proceeding on an argument and then relying on a contradictory argument to prevail in a later adversary proceeding within the same bankruptcy case of Mr. Gosman.

See Allapattah Servs., 372 F.Supp.2d at 1367.

In considering the flexible standard of the judicial estoppel doctrine, courts traditionally look at three factors: (1) whether a party's later position is clearly inconsistent with its earlier position; (2) whether a party succeeded in persuading a court to accept an earlier position, so that judicial acceptance of an inconsistent position creates the impression that either the first or the second court was misled; and (3) whether the party with an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. See, e.g., id.; Allapattah Servs., 372 F.Supp.2d at 1367. The Supreme Court has held that this list of factors is not exhaustive, but rather, "in enumerating these factors, we do not establish inflexible pre-requisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts." New Hampshire, 532 U.S. at 750–51, 121 S.Ct. 1808; see Allapattah Servs., 372 F.Supp.2d at 1368.

Under the law of this Circuit, "the doctrine of judicial estoppel is applied to the calculated assertion of sworn divergent positions, and is designed to prevent parties from making a mockery of justice by inconsistent pleadings." Allapattah Servs., 372 F.Supp.2d at 1367 (citing Salomon Smith Barney, Inc. v. Harvey, 260 F.3d 1302, 1308 (11th Cir.2001)). Pleadings are equivalent to sworn statements for the purposes of judicial estoppel. See Allapattah Servs., 372 F.Supp.2d at 1368, n. 12 (finding that the Eleventh Circuit has recognized that by filing pleadings and later advocating positions consistent therewith, an attorney makes representations to the court equivalent to an oath for purposes of judicial estoppel).

I find that the doctrine of judicial estoppel prevents the Trustee from arguing in the instant adversary proceeding that Peabody negligently failed to advise Gosman in connection with his transfers to Mrs. Gosman. First, the position the Trustee takes in this adversary proceeding against Peabody is inconsistent with the position the Trustee took in the prior adversary proceeding against Mr. and Mrs. Gosman. In the prior adversary proceeding, the Trustee succeeding in arguing to the Bankruptcy Court that Mr. Gosman had fraudulently transferred assets to Mrs. Gosman. Indeed, in the Third Amended Complaint for that adversary proceeding, the Trustee alleged that, "[a]t best, Gosman's counsel was no more than a 'rubber stamp' for a deal that had already been negotiated and drafted." Third Am. Compl. ¶¶ 77(b). The Trustee also alleged that "Gosman's counsel never independently inquired or investigated whether there were in fact any events of default under the 1996 Antenuptial Agreement. These are not the actions of an attorney that is zealously representing the interests of this client and, based upon the limited scope of the representation as conveyed by Gosman, this approach was clearly endorsed by and done with the approval of Gosman." Third Am. Compl. ¶ 77(a). Based on the allegations from the proceeding against Mr. and Mrs. Gosman[5], the Trustee's position in that phase of the litigation is clearly inconsistent with the position the Trustee takes in the proceeding before this Court.

Second, the Trustee succeeded in persuading the Bankruptcy Court that Mr. Gosman had fraudulently transferred as-

---

5. More extensive quotations from the Third Amended Complaint in the adversary pro-

ceeding against Mr. and Mrs. Gosman are included in Part I of this Order.

sets to Mrs. Gosman, and as reflected in the March 7, 2005 opinion by Judge Lessen, such a ruling requires a finding that Mr. Gosman intended to defraud creditors. After a trial, the Bankruptcy Court found that Mr. Gosman had fraudulently transferred his assets to Mrs. Gosman and voided the transfers. If this Court now accepted the Trustee's position that Mr. Gosman would not have transferred his assets to his wife if not for the advice of his lawyers, this would create the impression that either this Court or the Bankruptcy Court had been misled.

Third, the Trustee would derive an unfair benefit if allowed to take these inconsistent positions within the bankruptcy case of Mr. Gosman. The Trustee has already recovered the assets that were the subject of the fraudulent transfer proceeding, and the Trustee succeeded in convincing the Bankruptcy Court that Mr. Gosman intended to defraud his creditors. If the Trustee were to ultimately succeed in its proceeding against Peabody for malpractice, the Trustee would in effect be recovering twice in connection with the same transfers, by alleging opposite facts in two separate proceedings.

Therefore, I find that the three factors for judicial estoppel are met in this adversary proceeding. After considering those factors as well as all circumstances in the two adversary proceedings in the bankruptcy case of Mr. Gosman, I conclude that the Trustee is estopped from taking the position against Peabody that Mr. Gosman did not intend to defraud his creditors. The Trustee's allegations that Mr. Gosman would have acted differently if not for the advice of his lawyers are not consistent with Mr. Gosman's intent to defraud, and the Trustee is therefore barred from taking such a position. Therefore, I uphold the Bankruptcy Court's dismissal of Count I on this alternative ground.

In addition, I note that the allegations made by the Trustee in the adversary proceeding against Mr. and Mrs. Gosman constitute judicial admissions in this adversary proceeding against Peabody. A party is bound by the admissions in its pleadings, and "judicial admissions are proof possessing the highest possible probative value. Indeed, facts judicially admitted are facts established not only beyond the need of evidence to prove them, but beyond the power of evidence to controvert them." *Best Canvas Prods. & Supplies, Inc. v. Ploof*, 713 F.2d 618, 621 (11th Cir.1983).

Although "[n]ormally judicial admissions are binding for the purpose of the case in which the admissions are made, not in separate and subsequent cases," *Raiford v. Abney (In re Raiford)*, 695 F.2d 521, 523 (11th Cir.1983), both of these adversary proceedings occur in the context of a single bankruptcy case—the bankruptcy of Mr. Gosman. *See In re Mersmann*, 505 F.3d at 1043; *In re Caldor Corp.*, 303 F.3d at 168–169; *Cohen*, 905 F.2d at 1112. Therefore, for the purposes of judicial admissions, the pleadings in the adversary proceeding against Mr. and Mrs. Gosman occurred within the same bankruptcy case—the bankruptcy of Mr. Gosman—as the adversary proceeding against Peabody. As such, the Trustee is bound by those judicial admissions and estopped from now taking a contrary position.

Therefore, based on the doctrines of *in pari delicto*, collateral estoppel, judicial estoppel and judicial admissions, I affirm the Bankruptcy Court's dismissal of the Trustee's claims against Peabody. Accordingly, it is hereby

ORDERED AND ADJUDGED that

1. The Order on appeal by the Bankruptcy Court is AFFIRMED.

2. This appeal is DISMISSED.

3. This case is CLOSED.

DONE AND ORDERED in Chambers in Miami, Florida this 12 day of December, 2007.